1  Daniel Valles (SBN 269137)
   Kayla M. Rathjen (SBN 330046)
2  **VALLES LAW, P.C**
   1230 Rosecrans Avenue, Suite 300
3  Manhattan Beach, CA 90266
   Telephone:   (415) 234-0065
4  Facsimile:   (510) 369-2075

5  Attorneys for Plaintiff
   MATT SEIBERT, ON BEHALF OF HIMSELF,
6  AND ALL OTHERS SIMILARLY SITUATED

7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10 MATT SEIBERT, an individual on behalf        Case No. 3:23-cv-00279-AMO
   of himself, and all others similarly
11 situated;                                    **NOTICE OF MOTION AND MOTION FOR**
                                                **PRELIMINARY APPROVAL OF CLASS**
12              Plaintiff,                       **AND PAGA ACTION SETTLEMENT**

13    v.                                         Hearing Date:   December 12, 2024

14 SS&C TECHNOLOGIES, INC., a                    Time:           2:00 p.m.
   Delaware corporation, INTRALINKS,
15 INC., a Delaware corporation, and DOES       Courtroom:      10, 19th Floor
   1 to 100, inclusive;
16                                              Judge:          Hon. Araceli Martinez-Olguin
              Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

---

**TABLE OF CONTENTS**

I.    INTRODUCTION ------------------------------------------------------------------------------ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ----------------------------------------- 2

    A.    PARTIES AND CLAIMS --------------------------------------------------------------------- 2

    B.    PROCEDURAL POSTURE -------------------------------------------------------------------- 4

    C.    MEDIATION AND SETTLEMENT ---------------------------------------------------------- 5

III.  SUMMARY OF SETTLEMENT------------------------------------------------------------- 6

    A.    THE CLASS DEFINITION -------------------------------------------------------------------- 6

    B.    GROSS SETTLEMENT AMOUNT ----------------------------------------------------------- 6

    C.    RELEASE OF CLAIMS ---------------------------------------------------------------------- 7

    D.    PAGA PENALTY PAYMENT----------------------------------------------------------------- 8

    E.    ATTORNEYS' FEES AND LITIGATION EXPENSES ---------------------------------------- 9

    F.    SERVICE ENHANCEMENT PAYMENT ----------------------------------------------------- 9

    G.    SETTLEMENT ADMINISTRATOR------------------------------------------------------------11

    H.    PAYMENT TO SETTLEMENT CLASS MEMBERS --------------------------------------------11

    I.    NOTICE PROCEDURES ----------------------------------------------------------------------12

IV.   LEGAL STANDARD ------------------------------------------------------------------------14

V.    ARGUMENT ---------------------------------------------------------------------------------15

    A.    THE COURT SHOULD CERTIFY THE CLASS SOLELY FOR SETTLEMENT PURPOSES BECAUSE IT MEETS ALL APPLICABLE RULE 23 REQUIREMENTS.----------------------------------------------------------15

        1.    This case satisfies all four Rule 23(a) prerequisites.----------------------------------------16

        2.    This case also satisfies the requirements of Rule 23(b)(3).----------------------------------20

    B.    THE COURT SHOULD APPROVE THE SETTLEMENT BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE. -------------------------------------------------------------------------------22

        1.    The Settlement is the result of good faith, arm's-length negotiations before an experienced Mediator. -------------------------------------------------------------------------------23

        2.    The Settlement falls within the range of possible approval.-------------------------------24

        3.    Extent of discovery completed and stage of proceedings --------------------------------32

4.   *View of class counsel* ------------------------------------------------------------------*32*

5.   *Government participation, class member reactions, and other cases affected* --------------*32*

C.   THE PAGA PAYMENT IS FAIR AND REASONABLE.-------------------------------------------------------*32*

D.   THE PROPOSED COMPENSATION TO CLASS COUNSEL IS FAIR AND REASONABLE. ----------------*33*

E.   THE PROPOSED ENHANCEMENT AWARD IS FAIR AND REASONABLE.------------------------------*34*

1.   *Release of all claims* ----------------------------------------------------------------*35*

2.   *Fiduciary responsibilities* -----------------------------------------------------------*35*

3.   *Class counsel depended heavily on Plaintiff's input* -----------------------------------*36*

4.   *The public record of this lawsuit may impair future employment opportunities* -----------*36*

5.   *The low individual burden on each Class Member justifies the Enhancement Award* -----*36*

F.   THE NOTICE PROGRAM PROVIDES THE BEST NOTICE PRACTICABLE. -----------------------------*37*

VI.   **FINAL APPROVAL HEARING** --------------------------------------------------------------**37**

VII.   **CONCLUSION**------------------------------------------------------------------------**38**

1

# TABLE OF AUTHORITIES

2

C<small>ASES</small>

3  *Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007) --------------------------------------15

4  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618-20 (1997) ---------------------------------------22

5  *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980)-----------------------15

6  *Avila v. Ardian Corp.*, No. 18-CV-4795 (FB) (TAM), 2022 WL 3370024, at *2 (E.D.N.Y. Aug. 16,

7    2022) --------------------------------------------------------------------------------------------------16

8  *Baldwin & Flynn v. Nat'l Safety Assoc.*, 149 F.R.D. 598, 600 (N.D. Cal. 1993)------------------------16

9  *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975) ------------------------------------------ 16, 21

10  *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 529 (2018)------------------------------------ 30, 33

11  *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) ----------------------15

12  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)----------------------------------14

13  *Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013) --------------------------------------------------------26

14  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) -----------------------------17

15  *Dunleavy v. Nadler,* 213 F.3d 454, 459 (9th Cir. 2000) ---------------------------------------------------31

16  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) -------------------------------------------------16

17  *Eisenberg v. Gagnon*, 766 F.2d 770, 785-86 (3d Cir. 1985) ---------------------------------------------16

18  *Elkins v. Equitable Life Ins. of Ia.*, 1998 WL 133741 at *19 (M.D. Fla. 1998) ------------------------22

19  *ey v. Cellular Ala. P'Ship*, 1997 WL 450064, at *5 (N.D. Cal. 1997)-----------------------------------23

20  *Fleming v. Covidien, Inc.*, 2011 WL 7563047, *4 (C.D. Cal. 2011) -------------------------------------30

21  *G. F. v. Contra Costa Cnty.*, No. 13-cv-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30,

22    2015) --------------------------------------------------------------------------------------------------24

23  *Glass v. UBS Fin. Servs.*, Inc., 2007 WL 221862 (N.D. Cal. 2007)--------------------------------------34

24  *Glass v. UBS Finan. Servs.*, 2007 WL 221862, *4 (C.D. Cal. 2007) -------------------------------------31

25  *Green v. Lawrence Service Co.*, 2013 WL 3907506, *5, fn. 5 (C.D. Cal. 2013) ------------------------30

26  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) --------------------------------15, 17, 20

27  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)--------------------------------------19

28  *Hillman v. Lexicon Consulting, Inc.*, 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2019) ---------32

*In re Activision Secur. Litig.*, 621 F.Supp. 415, 428 (N.D. Cal. 1985)------------------------------------19

*In re Activision Securities Litigation*, 723 F. Supp. 1373,1375 (N.D. Cal 1989)------------------------34

*In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327 (D. N.J. 2002)--------------------26

*In re Immune Response Secur. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007)-------------------23

*In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013)-------------------------------------------------------------------------------------------------------------------31

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) --------------------------------------------14

*Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001)--------------------------------------------35

*Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012) -------------------------------------------------------------------------------------------------------------------24

*Knapp v. Art. com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017) --------------------------------------25

*Lewis v. Starbucks Corp.*, 2008 WL 4196690 (E.D. Cal. 2008)----------------------------------------------34

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) ---------------------------------------------------------------------------------------------- 20, 21

*Lozano v. AT&T Wireless*, 504 F.3d 718, 734 (9th Cir. 2007)------------------------------------------------19

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)------------------------------37

*Murray v. GMAC Mortgage Corp.,* 483 F. Supp. 2d 636, 643 (N.D. Ill. 2007) -------------------------19

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ---------------32

*O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2019 WL 1437101, at *4 (N.D. Cal. Mar. 29, 2019) -------------------------------------------------------------------------------------------------------------14

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)------------------------------------------------------------------------------------------------14, 23, 24

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)---------------------------33

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) --------------------------------------------------21

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) -----------------------------------------31

*Silber v. Mahon*, 18 F.3d 1449, 1454 (9th Cir. 1994) ----------------------------------------------------------37

*Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ------------------33

*Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) -------------------------------------------- passim

1    *Struhe v. Amer. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) ----------------------22

2    *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112, 1135 (2012)------------------------30

3    *U.S. v. Citrin*, 972 F.2d 1044, 1051 (9th Cir.1992)----------------------------------------------------------29

4    *Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ------------------------------------21

5    *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) --------------------------------------14

6    *Van Vranlcen v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995)----------------------------35

7    *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261 SBA (EMC), 2012 WL 5878390, at *6

8      (N.D. Cal. Nov. 21, 2012)------------------------------------------------------------------------------------24

9    *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2022) --------------------------------- 33, 34

10   *Wang v. Chinese Daily News*, 231 F.R.D. 602, 613 (C.D. Cal. 2005) ------------------------------------21

11   *Weiss v. York Hospital*, 745 F.2d 786, 808 (3d Cir. 1984) --------------------------------------------------16

12   *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001) ------------------------20

13                                                   STATUTES

14   Cal. Lab. Code § 2699(e)(2) ------------------------------------------------------------------------------------------26

15   Cal. Lab. Code § 2699(g) ---------------------------------------------------------------------------------------------26

16   Cal. Labor Code § 2699(e)(2) ----------------------------------------------------------------------------------------30

17   California Labor Code § 1102.5--------------------------------------------------------------------------------------36

18   California Labor Code § 98.6-----------------------------------------------------------------------------------------36

19   Private Attorney General Act Cal., Lab. Code § 2698 *et seq*. ("**PAGA**")---------------------------------- 2

20                                                     RULES

21   Fed. R. Civ. P. 23(a)(1)-----------------------------------------------------------------------------------------------16

22   Fed. R. Civ. P. 23(a)(1)-(4) ------------------------------------------------------------------------------------------16

23   Fed. R. Civ. P. 23(a)(2)-----------------------------------------------------------------------------------------------17

24   Fed. R. Civ. P. 23(a)(3)-----------------------------------------------------------------------------------------------19

25   Fed. R. Civ. P. 23(a)(4)-----------------------------------------------------------------------------------------------20

26   Fed. R. Civ. P. 23(b)(3)(A)–(C)-------------------------------------------------------------------------------------22

27   Fed. R. Civ. P. 23(b)(3)(D) ------------------------------------------------------------------------------------------22

28   Fed. R. Civ. P. 23(c)(2)(B)-------------------------------------------------------------------------------------------37

Fed. R. Civ. P. 23(e)(1)(B)--------------------------------------------------------------------------------14

Fed. R. Civ. P. 23(e)(2)(C)--------------------------------------------------------------------------------24

TREATISES

Manual for Complex Litigation § 1.46, at 53-55 (West 1977)--------------------------------------------15

Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 10573 (Rutter

   Group 2006)--------------------------------------------------------------------------------------------16

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 12, 2024, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 10, Plaintiff Matt Seibert ("**Plaintiff**") moves, pursuant to Federal Rule of Procedure 23, for preliminary approval of the class and Private Attorneys General Act of 2004 ("PAGA") action settlement on the terms and conditions set forth in the Joint Stipulation of Class and PAGA Representative Action Settlement and Release (the **"Settlement"** or "**Settlement Agreement**"). A copy of the Settlement Agreement is attached as **Exhibit A** to the Declaration of Daniel Valles. Plaintiff will further move that the Preliminary Approval Order specifically encompass the following:

1. Grant preliminary approval of the settlement based on the terms of the Settlement Agreement;

2. Preliminarily certify a class for settlement purposes only;

3. Designate Plaintiff as Class Representative for settlement purposes only;

4. Designate Daniel Valles and Kayla Rathjen of the law firm Valles Law P.C. as Class Counsel for settlement purposes only;

5. Grant approval of the PAGA payment for settlement purposes only;

6. Approve CPT Group, Inc. as the Settlement Administrator for settlement purposes only;

7. Approve, as to form and content, the Class Notice attached as **Exhibit 1** to the Declaration of Daniel Valles submitted in support of this motion;

8. Approve, as to form and content, the Settlement Agreement attached to the Declaration of Daniel Valles submitted in support of this motion;

9. Direct mailing of the Class Notice as set forth in the Settlement Agreement;

10. Approve the form and content of the proposed method of participation in the settlement, requesting exclusion from the settlement, or objecting to the settlement; and

11. Set a Final Approval and Settlement Fairness hearing.

This Motion for Preliminary Approval (the "**Motion**") is made on the grounds that, for purposes of settlement: (1) the Class meets all of the requirements for class certification under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure; (2) the Settlement is fair, adequate, and

1  reasonable as required under Rule 23(e); (3) Plaintiff and Class Counsel are adequate to represent the

2  Class as required by Rule 23(a)(4) and (g); (4) the notice procedures and related forms comport with

3  all relevant due process and Rule 23(c)(2)(B) requirements; and (5) based on the foregoing, notice

4  should be directed to Class members and a final approval hearing should be scheduled.

5  The Motion is based on this Notice, the Memorandum of Points and Authorities, the Declaration of

6  Daniel Valles ("**Valles Decl.**"), the Declaration of Matt Seibert ("**Seibert Decl.**"), the various

7  documents attached thereto, the records and file herein, and on such evidence as may be presented at

8  the hearing on the Motion.

9

10  Dated: November 4, 2024

VALLES LAW, P.C.

By: _____
Daniel Valles
Kayla M. Rathjen

Attorneys for Plaintiff
MATT SEIBERT, ON BEHALF OF
HIMSELF, AND ALL OTHERS
SIMILARLY SITUATED

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff Matt Seibert ("**Plaintiff**" or the "**Class Representative**") respectfully requests for this Court to preliminarily approve the proposed class action settlement set forth in the "Joint Stipulation of Class and PAGA Action Settlement and Release" (the "**Settlement Agreement**" or the "**Settlement**") (attached as Exhibit A to the Declaration of Daniel Valles [the "**Valles Decl.**"] in support of this Motion) between Plaintiff and Defendants SS&C Technologies, Inc. ("**SS&C**") and Intralinks, Inc. ("**Intralinks**") (collectively, the "**Defendants**"), both Delaware corporations.

Under the Settlement, Defendants have agreed to pay a Gross Settlement Amount ("**GSA**") of $1,550,000.00 to compromise disputed claims that arise from Defendants' alleged (1) Failure to pay overtime (Wage Order 4-2001, § 3 and California Labor Code §§ 510 and 1198); (2) Failure to provide meal breaks (Wage Order 4-2001, § 11 and California Labor Code §§ 512 and 226.7); (3) Failure to provide rest breaks (Wage Order 4-2001, § 12 and California Labor Code § 226.7); (4) Failure to pay minimum wages (Wage Order 4-2001, § 4 and California Labor Code §§ 1194, 1197, and 1182.12); (5) Failure to timely pay wages (California Labor Code §§ 204 and 210); (6) Failure to provide accurate itemized wage statements (California Labor Code § 226); (7) Failure to pay all wages earned upon discharge (California Labor Code §§ 201, 202, and 203); (8) Failure to reimburse business expenses (California Labor Code §§ 2800 and 2802); (9) Failure to provide timely access to employment records (California Labor Code § 1198.5); (10) Unlawful business practices (California Business and Professions Code §§ 17200 *et seq.*) and (11) Violations of PAGA (California Labor Code §§ 2699 *et seq.*).  For the reasons discussed below, the Settlement warrants preliminary approval because, for the purposes of settlement: (1) the Class (defined below) meets all requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure for class certification; (2) Plaintiff and his counsel ("**Plaintiff's Counsel**" or "**Class Counsel**") are adequate to represent the Class; (3) the Settlement bears all requisite indicia of fairness, reasonableness, and adequacy as required by Rule 23(e)(2); and (4) the notice procedure and related forms comport with Rule 23 and due process requirements. Thus, this Court should grant the Motion in its entirety, direct that notice be given to all Class Members, and schedule a hearing to consider final approval of the Settlement.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Parties and Claims

Intralinks is a leading financial technology provider for the global banking, deal making and capital markets communities.  It provides secure collaboration software and secure online document sharing solutions, such as virtual data rooms, that allow organizations to share data, documents and other information efficiently and securely with one another.  Intralinks promotes customer sales through various employee positions, including account executives, senior account executives, team leads, principal account executives, sales managers, sales directors, and sales engineers.  SS&C is Intralinks' parent company, and Plaintiff contends that SS&C is a joint employer, which Defendants deny.

Plaintiff was employed by Intralinks between July 2021 and July 2022 in California as a salesperson.  Plaintiff brought this case on behalf of himself and other similarly situated commissioned sales employees in the state of California (the "**California Sales Employees**") as well as Defendants' California employees ("**California Employees**") for various alleged violations of the California Labor Code as both a class action and as a representative action under the Private Attorney General Act Cal., Lab. Code § 2698 *et seq*. ("**PAGA**").  Plaintiff brings these claims against both Intralinks and SS&C, which he alleged were his joint employers.

More specifically, Plaintiff contends that Defendants have misclassified and continue to misclassify the California Sales Employees, who are inside sales employees, as exempt from overtime requirements under California law in violation of Wage Order 4.  Plaintiff alleges that California Sales Employees earn less than 50% of total compensation in commissions as required under Wage Order 4, which prevents them from being classified as exempt employees.

Plaintiff further alleges that he, and other similarly situated individuals, worked for Defendants in excess of forty (40) hours in a week and eight (8) hours in a day as well as seven (7) consecutive days in a week, without appropriate overtime compensation for the hours that they worked because Defendants classified the California Sales Employees as exempt and salaried.  Plaintiff therefore asserts, which Defendants deny, that Defendants failed to pay Plaintiff, and other similarly situated individuals, the overtime premium due for the overtime hours that they worked.  Therefore, Plaintiff

claims that he and other similarly situated individuals were routinely not paid for all the hours that they worked resulting in substantial unpaid "off-the-clock" work.

Furthermore, Plaintiff contends that he, and other similarly situated California Sales Employees, worked for Defendants without taking legally mandated meal and rest breaks and without appropriate premium pay for missed meal and rest breaks. Plaintiff asserts that Defendants repeatedly and intentionally failed to pay Plaintiff, and other similarly situated California Sales Employees, the premium due for the meal and rest periods that they worked.

Moreover, Plaintiff claims that Defendants have a policy and practice of having their commission plans expire on or about December 31 of an applicable year, but then not entering into new commission plans agreements with their California Sales Employees until on or about the end of March or April of the following year. Plaintiff alleges that Defendants then apply the new commission plans retroactively to commissions earned after the previous commission plan expired, but prior to the new commission plan being put into place. Plaintiff therefore asserts that Defendants retroactively apply their new commission plan to commissions already earned prior to the new commission plan being put into place and thus further claims that he and other similarly situated individuals were routinely not paid commissions owed to them.

Finally, for all California Employees, Plaintiff has alleged that Defendants have a policy and practice of providing no reimbursement to any of their California Employees for their business use of their cell phone, home internet, or any other "work from home" expenses that they incur in the course and scope of their employment. Additionally, Plaintiff has alleged that Defendants have a pattern and practice of refusing to pay their California Employees all of their earned wages immediately at the time of their separation from employment as well as a policy and practice of not permitting their employees to receive a copy of their payroll records within twenty-one (21) calendar days after making a request.

Defendants specifically and generally deny any and all liability or wrongdoing of any sort with respect to any and all of the claims alleged in the action, including Plaintiff's operative Second Amended Complaint ("**SAC**"), and make no concessions or admissions of liability of any sort. Defendants maintain that for any purpose other than settlement, the Action is not appropriate for class

or representative treatment and that, had this matter proceeded through litigation, it would be uncertifiable and unmanageable. Nonetheless, Defendants have concluded that further litigation would be protracted, distracting, and expensive, and that it is desirable to enter into the Settlement Agreement.

The Parties agree there is a bona fide dispute as to the claims in the alleged Action, and neither the Settlement Agreement, nor the Settlement-related documents, nor the Settlement itself shall be construed as an admission of either fact or law on any issue by any Party.

While Plaintiff believes he would overcome Defendants' defenses, Plaintiff acknowledges that there is significant risk as to whether he can certify or prove his claims and whether he can overcome Defendants' defenses to each of his claims. As a result, Plaintiff and Class Counsel think the Settlement is in the best interest of the Class.

**B.    Procedural Posture**

On October 12, 2022, Plaintiff filed a PAGA Notice with the California Labor and Workforce Development Agency ("**LWDA**"). Thereafter, on October 21, 2022, Plaintiff filed his proposed class action complaint against Defendants, as alleged joint employers, in San Francisco Superior Court seeking to represent multiple classes and subclasses consisting of allegedly misclassified California commissioned employees, California-based non-exempt employees, and all California employees of Defendants.

On December 19, 2022, Plaintiff filed his First Amended Complaint ("**FAC**") adding a PAGA representative claim. In the FAC, Plaintiff asserted that Defendants misclassified those Intralinks and SS&C employees eligible to earn commissions. As a result of the alleged misclassification, Plaintiff contended that Defendants failed to provide those employees overtime, meal and rest breaks, and one day of rest in seven days. Plaintiff also alleged that Defendants failed to comply with California's law requiring written commission agreements and failed to pay earned commissions in a timely manner. Plaintiff additionally alleged that Defendants failed to provide sick leave to all non-exempt employees, including allegedly misclassified commissioned employees. Finally, Plaintiff alleged that Defendants failed to reimburse their California-based employees for business use of cell phone, home internet, or other work from home expenses.

On January 19, 2023, Defendants removed the case to the United Stated District Court for the Northern District of California and moved to partially dismiss Plaintiff's claims.  On March 7, 2023, the Court granted Defendants' motion in part and denied in part, granting leave for Plaintiff to file an amended complaint.  In response, Plaintiff filed his operative SAC dismissing his sick leave class claims on behalf of Defendants' California non-exempt employees.  In his SAC, Plaintiff alleges various wage and hour violations on behalf of California Sales Employees and California Employees.  Specifically, the SAC asserted claims for: (1) Failure to pay overtime (Wage Order 4-2001, § 3 and California Labor Code §§ 510 and 1198); (2) Failure to provide meal breaks (Wage Order 4-2001, § 11 and California Labor Code §§ 512 and 226.7); (3) Failure to provide rest breaks (Wage Order 4-2001, § 12 and California Labor Code § 226.7); (4) Failure to pay minimum wages (Wage Order 4-2001, § 4 and California Labor Code §§ 1194, 1197, and 1182.12); (5) Failure to timely pay wages (California Labor Code §§ 204 and 210); (6) Failure to provide accurate itemized wage statements (California Labor Code § 226); (7) Failure to pay all wages earned upon discharge (California Labor Code §§ 201, 202, and 203); (8) Unreimbursed business expenses (California Labor Code §§ 2800 and 2802); (9) Failure to provide timely access to employment records (California Labor Code § 1198.5); (10) Unlawful business practices (California Business and Professions Code §§ 17200 *et seq.*) and (11) Civil penalties pursuant to the PAGA (California Labor Code §§ 2699 *et seq.*).

### C.    Mediation and Settlement

In September 2023, the Parties agreed to private mediation with David A. Rotman to try to resolve Plaintiff's claims.  On November 17, 2023, the Parties engaged in a full day mediation session with Mr. Rotman, who has extensive experience in labor and employment litigation.  During and prior to mediation, Defendants produced information and data related to the Commissioned Employee Class and California Employee Class (as such terms are defined below), including the aggregate number of workweeks/pay periods, the average hourly rate of employees, and the total number of employees for each of Plaintiff's proposed classes.  The Parties were not able to resolve their disputes at the mediation, but Mr. Rotman continued to engage with the Parties and issued a mediator's proposal that was ultimately accepted by the Parties on January 10, 2024, after continued extensive negotiations by the Parties.

1    The Parties and their counsel are sufficiently familiar with the facts of this Action and the
2    applicable laws to make an informed judgment as to the fairness of the Settlement, the respective
3    strengths and weaknesses of the claims brought by the group that Plaintiff sought to represent, and the
4    risks of proceeding in litigation.  The Parties are represented by competent counsel and have had the
5    opportunity to consult with counsel prior to signing the Settlement Agreement.

## III.    SUMMARY OF SETTLEMENT

The key terms of the Settlement are discussed and summarized below.  (*See also*, Valles Decl.,
¶12, Ex. A).

### A.    The Class Definition

The Settlement Class is defined as (i) all current and former employees who worked for SS&C
or Intralinks in the State of California who were eligible to earn commissions at any time between
October 21, 2018, through the date of preliminary approval of the Settlement or, at Defendants' option,
an earlier date pursuant to Section X of the Settlement Agreement ("the **Class Period**") (the
"**Commissioned Employees Class**") and (ii) all current and former employees who worked for SS&C
or Intralinks in the State of California at any time during the Class Period (the "**California Employees
Class**").  A "**Settlement Class Member**" means a Class Member who did not timely opt out of the
non-PAGA portion of the Settlement by submitting an opt-out request to the Settlement Administrator
by the opt-out deadline.

### B.    Gross Settlement Amount

Defendants will pay One Million Five Hundred Fifty Thousand Dollars and Zero Cents
($1,550,000.00), which Defendants will deposit to a Qualified Settlement Fund ("**QSF**") to be
established by the Settlement Administrator.  The GSA will be used to pay Settlement Administration
Costs, Class Counsel's attorneys' fees and costs, Plaintiff's Enhancement Award, the Individual Class
Settlement Payments, the PAGA Settlement Payments, and the PAGA Penalties to be paid to the
California Labor and Workforce Development Agency ("**LWDA**").  Defendants' corporate payroll
tax obligations shall be paid in addition to the GSA.  Defendants shall not be required to pay more
than the GSA, plus employer-side payroll taxes on the wage payments made to the members of the
Settlement Class.

1.      The Settlement is non-reversionary.  Thus, since any uncashed settlement check funds will be deposited by the Settlement Administrator pursuant to the *cy pres* doctrine, the Settlement Agreement and the associated Judgment do not and will not create any unpaid residue or unpaid residual, and no distribution of such shall be required.  As stated herein above, any estimated Individual Settlement Payments allocated to Rule 23 Class Members who request exclusion will become part of the Net Settlement Amount.  Similarly, as stated herein above, any portion of the requested attorneys' fee award or the requested Service Awards that is not approved by the Court shall become part of the Net Settlement Amount. See Settlement. Participating Class Members will have 180 days from the date of mailing by the Settlement Administrator to cash their settlement checks. Amounts represented by uncashed checks will be paid to Legal Aid at Work, a charity that represents low-wage workers to help them understand and assert their workplace rights, as a cy pres recipient (the "**Cy Pres Recipient**").  (Valles Decl., ¶ 97).  The Cy Pres Recipient has a clear nexus to the case at bar as the present action because the wage claims made by Legal Aid at Work are often the same type of claims made in the present actions brought by workers under the federal Fair Labor Standards Act and California wage-and-hour laws.  Plaintiff and Plaintiff's counsel have no relationship with the Cy Pres Recipient.  (Id. at ¶ 98; Seibert Decl., ¶ 9).  Defendants' counsel has represented that Defendants (and not Defendants' counsel) may have a conflict with Legal Aid at Work and, if Defendants do determine that a conflict exists, Defendants will file a motion to substitute another Cy Pres Recipient prior to the hearing on this Motion that meets this Court's standards for a Cy Pres Recipient.  (Valles Decl., ¶ 99).  If no such Motion is submitted, then Defendants will be consenting to Legal Aid at Work as the Cy Pres Recipient. (*Id*.).

## C.      Release of Claims

"**Commissioned Employees Class Released Claims**" means all federal, state and local law claims, rights, demands, liabilities, and causes of action that were or could have been asserted in the Action based on the same alleged facts in any complaint filed in the Action and arising during the Class Period, brought on behalf of the Commissioned Employees Class including, but not limited to, for alleged violations of California Labor Code sections 204, 210, 218.5, 226, 226.7, 246, 246.5, 248.5, 510, 512, 551, 552, 558, 558.1, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198, and 2751, or any claims

based on the following allegations:  failure to pay overtime; failure to provide meal breaks; failure to provide rest breaks; failure to pay minimum wages; failure to timely pay wages; failure to provide accurate itemized wage statements; failure to provide one day's rest in each seven (7) day period; failure to comply with California's sick leave laws, or violation of Cal. Bus. & Prof. Code sections 17200 *et seq*. by engaging in the foregoing conduct.  Commissioned Employees Class Released Claims include all claims for unpaid wages, overtime wages, statutory penalties, civil penalties, damages of any kind, interest, attorneys' fees, costs, injunctive relief, restitution, and any other equitable relief under California statute, ordinance, regulation, common law, or other source of law, including but not limited to the California Labor Code, California Business & Professions Code, California Civil Code, and California Industrial Welfare Commission Wage Orders.

"**California Employees Class Released Claims**" means all federal, state and local law claims, rights, demands, liabilities, and causes of action that were or could have been asserted in the Action based on the same alleged facts in any complaint filed in the Action and arising during the Class Period on behalf of the California Employees Class, including, but not limited to, for alleged violations of California Labor Code sections 201, 202, 203, 221, 226(c), 300, 1174, 1174.5, 1198.5, 2800, and 2802, or any claims based on the following allegations:  failure to pay all wages earned upon discharge; unreimbursed business expenses; failure to keep required payroll records; illegal collection and receipt for any part of wages paid; illegal assignment of wages without the assignment on a separate written instrument; failure to provide timely access to employment records; or violation of Cal. Bus. & Prof. Code sections 17200 *et seq.* by engaging in the foregoing conduct. California Employees Class Released Claims include all claims for unpaid wages, overtime wages, statutory penalties, civil penalties, damages of any kind, interest, attorneys' fees, costs, injunctive relief, restitution, and any other equitable relief under California statute, ordinance, regulation, common law, or other source of law, including but not limited to the California Labor Code, California Business & Professions Code, California Civil Code, and California Industrial Welfare Commission Wage Orders.

### D.    PAGA Penalty Payment

The Settlement allocates $155,000.00 of the GSA to a PAGA Penalty Payment, $116,250.00 (75%) of which will be paid to the LWDA for the enforcement of labor laws and education of

employers, and $38,750.00 (25%) to Aggrieved Employees on a *pro rata* basis as otherwise outlined in the Settlement. The portion of the PAGA Penalty Payment distributable to the Plaintiff and Aggrieved Employees shall not be deemed wages.

### E.    Attorneys' Fees and Litigation Expenses

Class Counsel will submit an application for: (a) an award of attorneys' fees of no more than one third (1/3) of the GSA, which is Five Hundred Sixteen Thousand, Six Hundred Sixty-Six U.S. Dollars and Sixty-Seven Cents ($516,666.67); and (b) an award of Class Counsel's actual litigation expenses of not more than Fifteen Thousand Dollars ($15,000.00) both of which would be paid out of the GSA.

### F.    Service Enhancement Payment

The Settlement also provides that Plaintiff may seek an Enhancement Award of up to Fifteen Thousand Dollars ($15,000.00) for his services as a class representative. Plaintiff shall be issued an Internal Revenue Service Form 1099 for any Enhancement Award approved by the Court. Defendants will not oppose Plaintiff's application to the Court to be consistent with the Enhancement Award to Plaintiff outlined in the Settlement Agreement.

Plaintiff spent a substantial amount of time and effort in producing relevant documents and past employment records and providing the facts and evidence necessary to prove Plaintiff's allegations. (Valles Decl., ¶ 88; Seibert Decl., ¶¶ 10-12). Plaintiff participated in the litigation. He was available whenever Class Counsel needed him and actively tried to obtain information that would benefit the Class Members, including, but not limited to, searching for and providing information related to his employment and employment conditions, providing needed information for mediation, settlement discussions, and potential class certification. (*Id*). Plaintiff attended meetings with Class Counsel and was present throughout the mediation session that resulted in this Settlement, which Plaintiff had to take time off work to attend at a significant financial cost to him. (*Id*. at ¶ 13). Plaintiff also took part in reviewing and approving the Settlement and filings on behalf of the Class Members. (*Id*. at ¶ 14). In addition to the effort that Plaintiff put into pursuing the case, he also took on great risk in pursuing a case against his previous employer. Few people want to file lawsuits, especially against their employers. By bringing a lawsuit against his former employer, Plaintiff incurred a real

risk of retaliation from his present employer, which is not Defendants, and future employers that will be present for the rest of his work life. Such conduct may be considered by future employers when choosing between an applicant who has never sued a prior employer and one who has.

As a condition of receiving his Enhancement Award, Plaintiff is also required to release all potential claims against Defendants and Released Parties[1] over and above the releases that are required by Class Members. Specifically, Plaintiff's release for this Enhancement Award is stated in Section 9.4 of the Settlement Agreement and is as follows:

> *Plaintiff, on behalf of himself and each of his respective heirs, representatives, successors, assigns, and attorneys, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Released Parties from all claims or causes of action of any type whatsoever, whether known or unknown, arising out of or related to (i) the Action or (ii) Plaintiff's employment with or separation of employment from either SS&C or Intralinks, including but not limited to any and all claims for wrongful discharge; termination in violation of public policy; discrimination; harassment; retaliation; failure to provide reasonable accommodation; failure to engage in a good faith interactive process; breach of contract, both express and implied; breach of covenant of good faith and fair dealing, both express and implied; promissory estoppel; negligent or intentional infliction of emotional distress; fraud; negligent or intentional misrepresentation; negligent or intentional interference with contract or prospective economic advantage; unfair business practices; defamation; libel; slander; negligence; personal injury; assault; battery; invasion of privacy; false imprisonment; conversion; and disability benefits; any and all claims for violation of any federal, state, or municipal statute, including, but not limited to, Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1991; Section 1981 of U.S.C. Title 42; the Rehabilitation Act of 1973; the Americans with Disabilities Act of 1990; the Equal Pay Act; the Fair Credit Reporting Act; the Fair Labor Standards Act; the Employee Retirement Income Security Act of 1974 (regarding unvested benefits); the Worker Adjustment and Retraining Notification Act; the Family and Medical Leave Act, except as prohibited by law; the Sarbanes-Oxley Act of 2002; the National Labor Relations Act; the Uniform Services Employment and Reemployment Rights Act; the Genetic Information Nondiscrimination Act; the Immigration Reform and Control Act; the California Family Rights Act; the California Labor Code; the California Industrial Welfare Commission Wage Orders; the California Business & Professions Code; and the California Fair Employment and Housing Act; any and all claims for violation of the federal, or any state, constitution; any and all claims arising out of any other laws and regulations relating to employment or employment discrimination, harassment or retaliation any and all claims for monetary recovery and personal or individual relief, except as prohibited by law; and any premiums, penalties, interest, punitive damages, costs, attorneys' fees, injunctive relief, declaratory relief, or accounting based on the claims.*

---

[1] "**Released Parties**" is defined as Defendants and their past or present officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, attorneys, consultants, insurers, and their respective successors and predecessors in interest, assigns, subsidiaries, affiliates, and parents in their individual and corporate capacities.

Accordingly, it is appropriate and just for Plaintiff to receive an Enhancement Award in the amount of $15,000.00, in addition to his Individual Settlement Payment, for his time and service as Class Representative. Moreover, the requested Enhancement Award is relatively modest, reasonable, and should be preliminarily approved in light of the risks faced by Plaintiff and the personal financial loss he has faced by serving as the Class Representative in this matter.

### G. Settlement Administrator

The Parties have agreed to use CPT Group, Inc. ("**CPT**") as the third-party Settlement Administrator, subject to this Court's approval. (Valles Decl., ¶ 92). CPT is a provider of notice and settlement class action administration services since 1984 and has been appointed as a third-party administrator by all major courts in California and a number of United States District Courts. (*Id.*) According to CPT, they have handled thousands of the most complicated class action settlement administration lawsuits. (*Id.* at ¶ 93.

In selecting a Settlement Administrator, Plaintiff's counsel reached out to four (4) different agencies to request quotes. (*Id*. at 94). Of the four that we reached out to, two declined to provide quotes and two provided quotes. (*Id*.). Of the two that provided quotes, CPT was significantly less expensive than the other company, which is why they were selected. (Id.). Over the past two years, our office been involved in two other class actions settlements that have elected to use CPT to act as a third-party Settlement Administrator. (*Id.*).

Settlement Administration Costs shall be paid in an amount not to exceed Twenty-Five Thousand Dollars and No Cents ($25,000.00), subject to approval from the Court, which will be paid from the GSA.

### H. Payment to Settlement Class Members

Individual Class Settlement Payments will be made from the Net Settlement Amount ("**NSA**"), after payment of all enumerated amounts from the GSA. The "**Net Settlement Amount**" means the amount remaining from the GSA after Class Counsel's court-approved attorneys' fees and costs, Plaintiff's Enhancement Award, the PAGA Penalties, and Settlement Administration Costs have been deducted from the GSA, from which the Individual Class Settlement Payments will be paid. Individual

Class Settlement Payments will be paid to Settlement Class Members in the form of a Settlement Check.

$200,000.00 will be allocated to make Individual Class Settlement Payments to California Employees Class Members. Each Individual Settlement Payment to California Employees Class Members will be calculated *pro rata* based on the number of Eligible Workweeks each California Employees Class Member has worked during the Class Period according to Defendants' records.

After subtracting the Individual Class Settlement Payments to California Employees Class, the remaining Net Settlement Amount should be allocated to make additional Individual Class Settlement Payments to Commissioned Employees Class Members. Settlement Payment will be calculated *pro rata* based on the number of Eligible Workweeks each Commissioned Employees Class Member has during the Class Period according to Defendants' records.

## I.    Notice Procedures

For each Class Member, Defendants will provide the Settlement Administrator with the following data from their records, to the extent available: (1) name, (2) social security number, (3) last known residential address, (4) last known telephone number, and (5) number of Eligible Workweeks worked during the Class Period. For each Aggrieved Employee, Defendants will provide the Settlement Administrator with the following data from their records, to the extent available: (1) name, (2) social security number, (3) last known residential address, (4) last known telephone number, and (5) number of Eligible Workweeks worked during the PAGA Period[2]. Defendants will provide this data (the "**Class Information**") to the Settlement Administrator within fifteen (15) calendar days (or, if that date falls on a weekend or holiday, the next court day thereafter) after the Court enters an order granting preliminary approval of the Settlement.

Within ten (10) calendar days of receiving the Class Information (the "**Notice Date**"), the Settlement Administrator will send Class Members, by first class mail, at their last known address, the Court-approved Class Notice, notifying them of the lawsuit and of their estimated share of the Settlement and the number of Eligible Workweeks they worked during the Class Period. The Settlement Administrator will also email the Court-approved Class Notice to Class Members' last

---

[2] "**PAGA Period**" is defined in the Settlement Agreement as the time period of October 12, 2021, through the date of preliminary settlement approval.

known address. The Settlement Administrator will take reasonable steps to ensure that the Class Notice packet is received by as many Class Members and Aggrieved Employees as possible, including by use of the National Change of Address Database and skip tracing to review the accuracy of and (if possible and as needed) updating mailing addresses.

If a Class Notice is returned because of an incorrect address, within ten (10) calendar days from receipt of the returned Class Notice ("**Re-notice Date**"), the Settlement Administrator will conduct a search for a more current address for the Class Member and remail the Class Notice to the Class Member (at the more current address, if one is found). The Settlement Administrator will use the National Change of Address Database and skip traces to attempt to find the current address. The Settlement Administrator will be responsible for taking reasonable steps to trace the mailing address of any Class Member for whom a Class Notice is returned by U.S. Postal Service as undeliverable. These reasonable steps shall include, at a minimum: (i) tracking of all undelivered mail; (ii) performing address searches for all mail returned without a forwarding address; and (iii) promptly remailing to Class Members for whom new addresses are found on or before the Re-Notice Date. If the Settlement Administrator is unable to locate a better address, the Class Notice shall be remailed to the original address, also on or before the Re-Notice Date. If the Class Notice is remailed, the Settlement Administrator will note for its own records the date and address of each remailing.

Class Members will have sixty (60) calendar days from the Notice Date to opt out of or object to the non-PAGA portion of the Settlement, or to dispute their Eligible Workweeks, unless extended by the Court (the "**Response Deadline**"). The Response Deadline for Class Members whose Class Notice was remailed will be sixty (60) calendar days after the Notice Date, or fifteen (15) calendar days after the Re-Notice Date, whichever date is later. The Settlement Administrator will inform the Class Member of the extended deadline with the remailed Class Notice. Class Members may dispute their workweeks by timely submitting information to the Settlement Administrator and may notify the Settlement Administrator of any objections to the Settlement. Class Members may submit workweek disputes, requests for exclusion, and objections to the Settlement Administrator by email, mail, or fax. The Settlement Administrator will certify jointly to Class Counsel and Defendants' Counsel any workweek disputes, opt-out requests, or objections to the Settlement within five (5) calendar days of

receiving such dispute, request, or objection. In the event of a dispute over a Class Member's Eligible Workweeks, Defendants will investigate the dispute and determine whether any correction to the number of Workweeks for the Class Members raising the dispute should be made and will then notify the Settlement Administrator of their determination. Defendants' Counsel will notify Class Counsel of Defendants' determination regarding such disputes submitted to the Settlement Administrator but will keep all contact information private. The Settlement Administrator will notify Class Members of Defendants' final determination regarding their workweek disputes by mail. In no case will a dispute regarding the number of Workweeks result in a payment by Defendants in excess of the GSA.

## IV.   LEGAL STANDARD

In the Ninth Circuit, there is a "strong judicial policy that favors settlements" of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Recognizing that "[p]arties represented by competent counsel" are "positioned . . . to produce a settlement that fairly reflects each party's expected outcome in [the] litigation," courts favor approval of settlements. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). At the preliminary approval stage, courts generally "require a determination of whether the proposed settlement 'falls within the range of possible approval' and 'has no obvious deficiencies.'" *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2019 WL 1437101, at *4 (N.D. Cal. Mar. 29, 2019) (internal citation omitted). Moreover, preliminary approval should be granted where the parties have 'show[n] that the court will likely be able to . . . approve the proposal under [the final approval factors in] Rule 23(e)(2)'" and 'certify the class for purposes of judgment on the proposal.'" *Id.* (citing Fed. R. Civ. P. 23(e)(1)(B)). The relative degree of importance to be attached to any particular factor will depend upon . . . the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

In reviewing a class action settlement, a court undertakes two fundamental inquiries. "First, the district court must assess whether a class exists." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In other words, the court must determine that the lawsuit qualifies as a class action under

Rule 23 to begin with.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (reviewing settlement to ensure compliance with requirements of Rule 23(a) and Rule 23(b)(3)).  Second, the court must determine whether the settlement is "fair, adequate, and reasonable."  *Staton*, 327 F.3d at 952.  When the parties reach a settlement agreement before a trial class is formally certified, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007).

Thus, judicial review of a class action settlement entails a two-step process.  "The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'  This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing."  *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (quoting Manual for Complex Litigation § 1.46, at 53-55 (West 1977)).  At the second stage, after class members have had an opportunity to object to the settlement, the court makes a final determination whether the settlement is "fair, reasonable, and adequate" under Rule 23(e).  *Armstrong*, 616 F.2d at 314.  In particular, determining whether a proposed settlement is fair, adequate and reasonable depends upon:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

## V.   ARGUMENT

### A.   The Court Should Certify the Class Solely for Settlement Purposes Because It Meets All Applicable Rule 23 Requirements.

Under the first step of the preliminary settlement approval analysis, this Court is obligated to make an initial determination that the Class meets the class certification requirements of Rule 23.  This requires that all four Rule 23(a) prerequisites and that at least one of the three Rule 23(b) requirements be met.  Plaintiff needs only make a "prima facie showing" of the requirements under Rule 23.  *See* Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 10573 (Rutter Group

2006).  In determining the propriety of class certification, a court may not delve into the underlying merits of the claims.  The fundamental question "is not whether . . . plaintiff [has] stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

Accordingly, the Ninth Circuit has established that, when ruling on the propriety of class certification, a district court "is bound to take the substantive allegations of the complaint as true." *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).  A court "may not require plaintiff to make a preliminary proof of [his] claim; it requires only sufficient information to form a reasonable judgment." *Baldwin & Flynn v. Nat'l Safety Assoc.*, 149 F.R.D. 598, 600 (N.D. Cal. 1993).  Under these governing standards, this action meets the requirements for certification under Rule 23(a) and Rule 23(b)(3) for settlement purposes.[3]

### 1.    This case satisfies all four Rule 23(a) prerequisites.

The prerequisites of Rule 23(a) are as follows and explained in more detail in turn below: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy of representatives; and (5) adequacy of counsel.  Fed. R. Civ. P. 23(a)(1)-(4).

#### a)    The Settlement Class is sufficiently numerous.

To meet the Fed. R. Civ. P. 23(a)(1) numerosity requirement, the class must be "so numerous that joinder of all members is impracticable."  It has consistently been held that joinder is impracticable where the class is composed of hundreds of potential claimants; indeed, impracticability of joinder has often been found where the class is composed of less than 100 members, impracticability of joinder has often been found where the class is composed of less than 100 members. See, e.g., *Eisenberg v. Gagnon*, 766 F.2d 770, 785-86 (3d Cir. 1985) (90 class members meets numerosity requirement); *Weiss v. York Hospital*, 745 F.2d 786, 808 (3d Cir. 1984) (92 class members meets the numerosity requirement); *Avila v. Ardian Corp.*, No. 18-CV-4795 (FB) (TAM), 2022 WL 3370024, at *2 (E.D.N.Y. Aug. 16, 2022) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.

---

[3] Defendants have agreed not to oppose class certification solely for purposes of settlement.  While Defendants do not oppose this motion, they do not concede any of Plaintiff's contentions regarding class certification and would oppose class certification for any purpose outside of this settlement.

1995)) ("A proposed class of more than 40 members presumptively satisfies the numerosity requirement.").

Here, based on the information that Defendants have furnished, as of November 17, 2023, there were approximately 46 employees with 4,292 workweeks in the Commissioned Employees Class and 277 employees with 36,246 workweeks in the California Employees Class. Because it would be impracticable to join all of these persons as plaintiffs in a single lawsuit, the Class meets the Rule 23(a)(1) numerosity requirement for settlement purposes.

### b)    There are common questions of law and fact.

To meet the Fed. R. Civ. P. 23(a)(2) commonality requirement, there must be "questions of law or fact common to the class." This requirement is construed "permissively'" and "the existence of shared legal issues with divergent factual predicates will suffice." *Hanlon*, 150 F.3d at 1019. As explained below, the Class meets this requirement.

Plaintiff contends that the Class Members share common questions of law and fact. In this case, as a result of working for the same employer, according to Plaintiff, Defendants incorrectly classified exempt sales employees, while subjecting them to the same general wage and hour policies and thus, Class Members share claims that call for the resolution of common legal and factual questions. Plaintiff contends these common questions include, but are not limited to:

- whether Defendants maintained a policy and/or practice whereby California Sales Employees were improperly classified as exempt from overtime as opposed to non-exempt employees;

- whether Defendants maintained a policy and/or practice of failing to pay California Sales Employees the legally mandated minimum-wage for all hours worked;

- whether Defendants maintained a policy and/or practice of failing to pay California Sales Employees their legally mandated overtime in accordance with California Labor Code § 510 for all hours worked in excess of forty (40) hours in a week, eight (8) hours in a day, or on a seventh consecutive day of a workweek;

- whether Defendants maintained a policy and/or practice of failing to provide California Sales Employees the meal periods to which they were entitled under California law;

- whether Defendants maintained a policy and/or practice of failing to allow California Sales Employees the rest periods to which they were entitled under California law;

- whether Defendants maintained a policy and/or practice of failing to pay California Sales Employees the additional hour of compensation owed to them under California Labor Code section 226.7 for all shifts during which a mandated meal period was not provided;

- whether Defendants maintained a policy and/or practice of failing to pay California Sales Employees the additional hour of compensation owed to them under California Labor Code section 226.7 for all shifts during which they were deprived a mandated rest period;

- whether Defendants maintained a policy and/or practice of failing to maintain and furnish accurate, itemized wage statements to Commissioned Employee Class Members and the California Employee Class Members in violation of California Labor Code § 226 and Wage Order 4;

- whether Defendants maintained a policy and/or practice of failing to properly pay the Commissioned Employee Class Members and the California Employee Class Members within the time limits prescribed by California Labor Code section 204;

- whether Defendants maintained a policy and/or practice of failing to properly pay former California Sales Employees within the time limits prescribed by California Labor Code sections 201 and 202; and

- whether Defendants' alleged violations of the California Labor Code serve as predicate violations of California Business and Professions Code §§ 17200 *et seq.*

In view of the claims asserted, Plaintiff contends the answers to these common questions will determine Defendants' *prima facie* liability to Class Members on the core minimum and overtime wages, meal and rest breaks, and commission earnings claims in this case, as well as the derivative penalties claims that flow from them. Thus, common questions predominate over questions that may be unique to individual Class Members for settlement purposes.

1

2

       *c)*     ***The named Plaintiff's claims are typical of other Class Members'***
             ***claims.***

3        Fed. R. Civ. P. 23(a)(3) requires "the claims or defenses of the representative parties [to be]

4  typical of the claims or defenses of the class." This refers to the nature of the representative's claim,

5  "and not to the specific facts from which it arose." *See Hanon v. Dataproducts Corp.*, 976 F.2d 497,

6  508 (9th Cir. 1992). As such, it is "not necessary that all class members suffer the same injury."

7  *Lozano v. AT&T Wireless*, 504 F.3d 718, 734 (9th Cir. 2007). Rather, the test is "whether other

8  members have the same or similar injury, whether the action is based on conduct, which is not unique

9  to the named plaintiffs, and whether other class members have been injured by the same course of

10  conduct." *Id.* Thus, there will be typicality where a lawsuit is based on conduct which is not unique

11  to Plaintiff, but on a course of conduct that is common to all class members. *See, e.g.*, *Murray v.*

12  *GMAC Mortgage Corp.,* 483 F. Supp. 2d 636, 643 (N.D. Ill. 2007) (finding typicality where, despite

13  minor factual discrepancies, all class members had "the same essential characteristics"); *see also In re*

14  *Activision Secur. Litig.*, 621 F.Supp. 415, 428 (N.D. Cal. 1985) (noting that "the only material

15  variation among class members is the amount of damages to which each member is entitled" and

16  reasoning that "[s]uch differences are insufficient to defeat class certification").

17        Plaintiff is typical of the Class for settlement purposes. Plaintiff alleges he was a California

18  Sales Employee for Defendants and asserts claims that flow from Defendants' alleged

19  misclassification of the California Sales Employees as exempt from overtime and minimum wage

20  requirements as well as failing to properly pay commissions due and owed to him. Because Plaintiff

21  alleges he was subject to the same general course of conduct as absent Class Members, Plaintiff

22  contends resolving these questions as they apply to Plaintiff will determine Defendants' liability to the

23  entire Class. Moreover, Plaintiff's claims could potentially be subject to the same primary affirmative

24  defenses as those of absent Class Members.

25        Thus, Plaintiff asserts that common proof will answer the common questions recounted above

26  for both Plaintiff and Class Members. As such, for settlement purposes, Plaintiff is typical of Class

27  Members in that they have the same interest in recovering unpaid wages from Defendants.

28

1
2

    *d)*  **The Class Representatives and Class Counsel will continue to fairly**
      **and adequately protect the Settlement Class's interests.**

3
4
5
6
7
8
9
10
11
12
13
14
15

  Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequate representation turns on whether the named Plaintiff and his counsel "have any conflicts of interest with other class members," and whether he and his counsel will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. Here, as discussed above, Plaintiff alleges he shares the same claims for unpaid wages and related relief as the Class Members and those claims could be subject to the same defenses. Moreover, the law firm that comprises Class Counsel has substantial experience in employment law and class action litigation. As their supporting declarations reflect, Class Counsel has substantial experience in wage and hour litigation in California as Mr. Valles, himself, has over fourteen (14) years of wage and hour litigation experience. (Valles Decl., ¶ 7). Thus, Plaintiff and his counsel are adequate to represent the Class for settlement purposes. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (adequacy established by mere fact that counsel were experienced practitioners).

16

    **2.**  **This case also satisfies the requirements of Rule 23(b)(3).**

17
18
19
20
21

  In addition to Rule 23(a) prerequisites, class certification requires the moving party to show that one or more of the requirements of Rule 23(b) are met. Here, as explained below, the Class meets the requirements of Rule 23(b)(3) for settlement in that Class Members share common questions that predominate over any questions unique to individual Class Members and class action treatment is the superior means of resolving this dispute.

22

    *a)*  ***Common issues of law and fact predominate.***

23
24
25
26
27
28

  The predominate inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162. This inquiry is based on "the notion that the adjudication of common issues will help achieve judicial economy." *See, e.g., Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather

than on an individual basis." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162.  It is well settled that the need for determining differing amounts of damages suffered by class members does not preclude class certification. *See Blackie*, 524 F.2d at 905; *Wang v. Chinese Daily News*, 231 F.R.D. 602, 613 (C.D. Cal. 2005).

As explained above, Plaintiff submits that Class Members share predominant common questions under these standards.  Because the answers to these common questions will resolve Defendants' alleged liability to Class Members except with respect to the amounts of damages to be awarded, which may be largely calculated by reference to Defendants' company payroll records, company policies, software programs, and computer log-in records, the Class satisfies the Rule 23(b)(3) requirement for settlement purposes that common questions predominate over individual ones.

> **b)**      ***A class action is the superior method for adjudicating, and settling, the Plaintiff's and the Class's claims.***

To determine whether the superiority requirement of Rule 23(b)(3) is met, this Court must compare the class action vehicle with alternative methods for adjudicating the claims at issue.  The absence of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. *Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists"). Accordingly, where "a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162; *see also Valentino*, 97 F.3d at 1235-36.  Most of the Class Members stand to recover damages in relatively small amounts.  Accordingly, as in *Culinary/Bartender Trust Fund*, "this case involves multiple claims for relatively small sums" and a class action clearly serves as the only method that would "'permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'" 244 F.3d at 1163 (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985)).

A consideration of the factors listed in Rule 23(b)(3) only bolsters this conclusion.  Ordinarily, these factors are (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy

already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  When assessing these issues of predominance and superiority, the court may consider that the class will be certified for settlement purposes only.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618-20 (1997).  A showing of manageability of trial is not required in that context.  *Id.*  Rather, the test is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *See id.* at 623; Fed. R. Civ. P. 23(b)(3)(D).

The Class easily meets that requirement.  In deciding whether to certify a class for settlement purposes, a district court "need not inquire whether the case, if tried, would present intractable management problems."  *Amchem Prods., Inc.*, 521 U.S. at 620.  In addition, the remaining factors set forth in Fed. R. Civ. P. 23(b)(3)(A)–(C) all favor the grant of class certification.  The Class Members have no particular interest in individually controlling the prosecution of separate actions and any Class Member who wants to pursue a claim for a greater amount can request exclusion from the Settlement.  There is also no competing litigation regarding the claims in this case and it is desirable to concentrate the issues in this forum because Plaintiff alleges that he and the Class Members worked for Defendants in California.  Finally, "[w]ith the settlement in hand, the desirability of concentrating the litigation in one forum is obvious."  *Elkins v. Equitable Life Ins. of Ia.*, 1998 WL 133741 at *19 (M.D. Fla. 1998); *Struhe v. Amer. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (final two Rule 23(b)(3) factors are "conceptually irrelevant in the context of a settlement").  Thus, for settlement purposes, the conclusion is inescapable that a class action provides the most efficient mechanism for resolving the claims in this case.

**B.**    **The Court Should Approve the Settlement Because It Is Fair, Reasonable, and Adequate.**

No single criterion is dispositive for whether a class settlement meets the requirements of Rule 23(e). The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important. *See Staton*, 327 F.3d at 959. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and

circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* (internal citations omitted).

Where a settlement results from arms' length negotiations after "relevant discovery" there is "a presumption that the agreement is fair." *Linney v. Cellular Ala. P'Ship*, 1997 WL 450064, at *5 (N.D. Cal. 1997). So long as the discovery is sufficient to give the parties a clear view of the relative strengths and weaknesses of their respective cases, it need not be exhaustive. *See, e.g.*, *In re Immune Response Secur. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases). Notwithstanding any presumptions, the ultimate touchstone is whether "class counsel adequately pursued the interests of the class as a whole." *Staton*, 327 F.3d at 961. As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective. Indeed, Rule 23(e) review "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." Thus, the Ninth Circuit will not reverse a district court's approval of a settlement "unless the fees and relief provisions clearly suggest the possibility that class interests gave way to self-interest." *Staton*, 327 F .3d at 961.

**1.**   **The Settlement is the result of good faith, arm's-length negotiations before an experienced Mediator.**

The Settlement was negotiated at arms' length. On November 17, 2023, the Parties engaged in a full day mediation session with David A. Rotman, who has extensive experience in labor and employment litigation. During and prior to mediation, Defendants produced information and data related to the Class Members and Aggrieved Employees, including the aggregate number of workweeks/pay periods, the average hourly rate of employees, and the total number of employees for each of Plaintiff's proposed classes. The Parties were not able to resolve their disputes at the mediation, but Mr. Rotman continued to engage with the Parties and issued a mediator's proposal that was ultimately accepted by the Parties on January 10, 2024. "[T]he assistance of an experienced

mediator in the settlement process confirms that the settlement is non-collusive." *See G. F. v. Contra Costa Cnty.*, No. 13-cv-03667-MEJ, 2015 WL 4606078, at \*13 (N.D. Cal. July 30, 2015) (citation omitted); *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261 SBA (EMC), 2012 WL 5878390, at \*6 (N.D. Cal. Nov. 21, 2012) (noting that private mediation "tends to support the conclusion that the settlement process was not collusive"). This favors preliminary approval.

**2.**   **The Settlement falls within the range of possible approval.**

It is axiomatic that "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Just.*, 688 F.2d at 624. The Settlement provides substantial monetary relief to the Class considering (1) the costs, risks, expenses, and delays of trial and appeal, (2) the effectiveness of the proposed distribution plan, and (3) the fair and explained terms of the substantial GSA that will sufficiently pay for all of the settlement costs, including any award of attorneys' fees and expenses. Fed. R. Civ. P. 23(e)(2)(C).

*a)*   *The strengths and weaknesses of Plaintiff's case and the complexity and likely duration of further litigation*

The Settlement provides substantial relief to the Class in the face of the inherent uncertainties of litigation. "The substantial and immediate relief provided to the Class under the Settlement weighs heavily in favor of its approval compared to the inherent risk of continued litigation, trial, and appeal, as well as the financial wherewithal of the defendant." *Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 WL 5948951, at \*5 (N.D. Cal. Nov. 28, 2012).

This case presents significant risks to recovery. These risks include, but are not limited to: (i) the risk that Defendants would be able to prove that, as a matter of practice, it provided meal and rest breaks; (ii) the risk that Plaintiff would be unable to prove that Defendants acted with the requisite scienter to justify awards of statutory penalties under California Labor Code §§ 203 and 226(e); (iii) the risk that Plaintiff would face difficulties in recovering substantial civil penalties based on the discretion this Court has under the PAGA to reduce them; (iv) the risk that class members would obtain considerably smaller recoveries if no penalties are recovered (*i.e.*, Plaintiff failed to show Defendants' conduct was willful and intentional under California Labor Code §§ 203 and 226, respectively) and relief is limited to the underlying restitution for overtime hours and meal and rest

premiums; (v) the risk that Defendants would be able to defeat class certification based on variations in the experiences of absent Class Members; and (vi) the risk that Defendants will garner additional releases from putative Class Members before trial (presenting dangers to Plaintiff's ability to proceed with a class action even if initially certified).  While Plaintiff strongly believes in the merits of this case, he recognizes that protracted litigation presents risks to the class as a whole.

There is meaningful risk that a factfinder could agree with Defendants at trial.  Indeed, class action trials are inherently risky.  In the face of additional months, if not years, of litigation, Plaintiff must weigh the very real risk that the Court—or a jury—could be unconvinced that Defendants misclassified Class Members.    Accordingly, while Plaintiff vigorously disputes Defendants' contentions on the merits, the risks of litigation weigh in favor of settlement.  *See Knapp v. Art. com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017) (approving settlement where "[c]ase law suggests that plaintiff would have faced challenges in continuing to litigate" and "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results").

While Plaintiff may be able to establish that the California Sales Employees were misclassified as exempt, Defendants might be able to present evidence that more than half of these employees' salaries derived from commissions or that they were properly classified under one or more exemptions. Specifically, Defendants assert that Plaintiff and other California Sales Employees are exempt under the administrative exemption, outside sales exemption, commissioned employee exemption or, for Managers, the executive exemption. In turn, if Defendants are correct, Plaintiff would not have a case for wage and hour claims, based on the fact that Plaintiff and other similarly situated individuals would be exempt from overtime and minimum wage requirements. Further, Defendants contend that Plaintiff cannot certify any proposed class or subclass. As noted, Defendants believe there are multiple exemptions that may be applicable, and as such, predominance of individualized inquiries necessary to establish liability on the exemption issue alone will necessarily create hundreds of mini-trials, thus defeating class certification.

Furthermore, the level of proof required to meet the scienter requirements of California Labor Code §§ 203 and 226(e) ("willful," "good faith," and "intent") is largely unknown due to a dearth of

caselaw on the subjects.  Even assuming Defendants underpaid Class Members, there is no guarantee that the Court will find Defendants' underpayment was "willful" or intentional under California Labor Code §§ 203 and 226, respectively, considering that the amount of off-the-clock work performed by the California Sales Employees was reasonably considered exempt from these Code provisions.

Civil penalties under the PAGA are also difficult to predict in view of the statute's reduction provisions.  *See* Cal. Lab. Code § 2699(e)(2) (". . . a court may award a lesser amount than the maximum civil penalty amount specified by this part if . . . to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory").  While Class Counsel can recover attorneys' fees under PAGA (Cal. Lab. Code § 2699(g)), this will not be a source of great joy to Class Members if their recovery of civil penalties is small.

Additionally, caselaw has made it difficult to certify a class in federal courts because of the predominance requirement of Rule 23(b)(3) on damages.  The Supreme Court in *Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013) denied certification because plaintiffs were not able to offer a theory for the exact calculation of damages.  The *Comcast* decision suggests that damages must also be a common class wide issue and that the calculation of the damages is required at the class certification stage.  In the absence of records showing the exact overtime hours the putative class members worked, proving class wide damages may be difficult.

Considering that these uncertainties could also lead to protracted litigation, both at the trial and appellate levels, the circumstances surrounding the Settlement show that it reflects a fair, adequate, and reasonable compromise of disputed claims on behalf of the Class Members.  Thus, Plaintiff has achieved a fair settlement that reflects an excellent recovery on behalf of the Class Members that merits this Court's preliminary approval.  *See In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327 (D. N.J. 2002) (approving settlement that only provided recovery based on the estimated liability exposure).

(1)    Unpaid Overtime

With respect to the overtime claim, Plaintiffs estimated, based on information provided by Plaintiff and other putative class members, that California Sales Employees worked approximately five (5) hours per week of overtime.  (Valles Decl., ¶ 42)

The average regular rate of pay for the Intralinks California Sales Employees is $93.56 and

there were approximately 2,850 workweeks for these putative class members. (*Id*.).  Accordingly, according to Plaintiff's calculation, this results in unpaid overtime wages for all Intralinks California Sales Employees during the Class Period of approximately $1,999,845 ([5 hours of overtime/each workweek] x [2,850 workweeks] x [1.5 x $93.56 hourly regular rate).  (*Id*.).

The average regular rate of pay for the SS&C California Sales Employees is $99.28 and there were approximately 293 workweeks for these putative class members. (*Id*.).  And, according to Plaintiff's calculation, this results in unpaid overtime wages for all SS&C California Sales Employees during the Class Period of approximately $218,167.80 ([5 hours of overtime/each workweek] x [293 workweeks] x [1.5 x $99.28 hourly regular rate).  (*Id*.).

Thus, according to Plaintiff's calculation, there is approximately a potential total unpaid overtime of $2,218,012.80.  (*Id*.).

However, given Defendants' defenses including their exemption arguments described above, as well as Defendants' arguments that a class would not be certified because the individual experiences of Class members would lead to individual inquiries regarding their duties, their hours worked, and their individual experiences with respect to whether they qualified for any of the exemptions, Plaintiff discounted this maximum amount by 40% for a risk of non-certification, and by an additional 50% for a risk of losing on the merits, for a total projected exposure of $665,403.84 for California Sales Employees.  (*Id.*, at ¶ 43)

(2)    Unpaid Meal and Rest Breaks

Plaintiff estimated based on his data analysis that Intralinks California Sales Employees worked approximately 14,250 days during the Class Period that were eligible for a meal period violation (i.e., over 5 hours) as well as approximately 14,250 days eligible for at least one rest period (i.e., at least 3.5 hours) in California during the Class Period, and that Intralinks California Sales Employees' average rate of pay was $93.56.  (Id. at ¶ 44.) Thus, per Cal. Labor Code § 226.7, Plaintiff estimates Defendants' total potential meal and rest period exposure for Intralinks California Sales Employees as: (14,250 x $93.56) + (14,250 x $93.56) = $2,666,460.  Id.

Plaintiff also estimated based on his data analysis that SS&C California Sales Employees worked approximately 1,465 days during the Class Period that were eligible for a meal period violation (i.e., over 5 hours) as well as approximately 1,465 days eligible for at least one rest period (i.e., at least

3.5 hours) in California during the Class Period, and that SS&C California Sales Employees' average rate of pay was $99.28.   (Id. at ¶ 45). Thus, per Cal. Labor Code § 226.7, Plaintiff estimates Defendants' total potential meal and rest period exposure for SS&C California Sales Employees as: (1,465 x $99.28) + (1,465 x $99.28) = $145,445.20.  (Id.)

In sum, according to Plaintiff's calculation, there is approximately a potential total unpaid meal and rest breaks of $2,811,905.20.  (*Id*., ¶ 46).

As noted, however, Defendants raised several defenses to these claims. Defendants contend that California Sales Employees are exempt from meal and rest period laws, and regardless, they were not closely supervised and are therefore free to take meal and rest periods as they see fit.  (Id. at ¶ 47). Moreover, Defendants argue there is no company policy that requires California Sales Employees to remain on duty or on call at all times; rather, any missed meal or rest periods are the result of employee choice, not Defendants; policies or practices.  (*Id*.).   Defendants also argue that this claim would not be suitable for class certification, as it would require individual inquiries into whether an individual employee missed a meal or rest period on a particular shift, and if so, why the employee missed each break. (*Id*.).

Accordingly, Plaintiff discounted these maximum amounts by 50% for a risk of non-certification and an additional 50% for a risk of losing on the merits, for a total projected exposure of $702,976.30.  (*Id.)*

(3)    Wage Statements

During the Class Period, Defendants' records show that they employed approximately forty-nine (49) California Sales Employees. (*Id*. at ¶ 48.).   Counting the number of pay periods for each California Sales Employee (but counting no more than 40 per person to account for the $4,000 per employee maximum penalty under Labor Code § 226(e)), there were approximately 1,010 wage statements during the Class Period that Plaintiff alleges were defective and could potentially result in penalties of $98,550 ($50 x 49 Intralinks non-exempt employees [first alleged violation penalty for first 49 wage statements]) + ($100 x 961 subsequent wage statements [second alleged violation penalties]). (*Id*.).

However, Defendants presented several defenses to this claim, including its argument that no violations occurred, and that any alleged violations were not "knowing and intentional" as required by

Cal. Labor Code § 226(e). (*Id*. at ¶ 49.). Defendants further argue that these derivative claims would fail for the same reasons Plaintiffs' underlying claims would fail, both as to the merits and as to class certification. (*Id.*).

Accordingly, Plaintiff discounted these maximum amounts by 50% for a risk of non-certification and an additional 50% for a risk of losing on the merits, for a total projected exposure of $24,637.50. (*Id.*).

(4)    Waiting Time Penalties

Defendants' records reflected approximately 107 former California Sales Employees who separated their employment within three years preceding the filing of Plaintiff's Complaint. (*Id*. at ¶ 50.) Based on an hourly rate of pay of $47.03 for the former employees, and an average workday of 8 hours, Plaintiffs estimated the average waiting time penalty per former employee to be $11,287.20 (8 hrs x $47.03 x 30 days). (*Id*.) Therefore, Plaintiff estimated Defendant's potential California waiting time penalty exposure as follows: 107 former employees times $11,287.20 = $1,207,730.40. (*Id*.)

However, Defendants presented several defenses to this claim, most notably its assertion that because it possessed good-faith defenses to the underlying claims, any failure to pay wages was not "willful" as a matter of law, as there exists a bona fide dispute over whether wages are due. (*Id*. at ¶ 51.) Moreover, Defendants contend that, particularly given their good-faith defenses, the waiting time penalties sought are unconstitutional, as they would be disproportionate to the amount of unpaid wages. *See U.S. v. Citrin*, 972 F.2d 1044, 1051 (9th Cir.1992) ("the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.") (internal quotations omitted). Defendants further contend that Plaintiffs' claims for these derivative penalties would fail for the same reasons as their underlying claims would fail, both on the merits and with respect to class certification. (*Id*.)

Accordingly, Plaintiff discounted these maximum amounts by 45% for risk of non-certification, and by an additional 65% for risk of losing on the merits or not recovering the maximal penalty, to arrive at a projected exposure of $232,488.10. (*Id*.)

(5)    Unreimbursed Business Expenses

With respect to the unreimbursed business expenses claim, Plaintiff estimated, based on

information provided by Plaintiff and other putative class members, that California Employees were not reimbursed for their business usage of their personal cell phone bills, home internet and office supplies.  (*Id*. at ¶ 52.)  Plaintiff estimates that the average cell phone bill for each employee that should have been reimbursed was $50 each month, average home internet bill for each employee that should have been reimbursed was $20 each month, and each employee should have been reimbursed approximately $20 each month for office supplies.  (*Id*.).  This would result in a monthly reimbursement for California Employees of approximately $90 per month.  (*Id*.)

Defendants' records reflected that they employed approximately 248 California Employees during the Class Period who worked approximately 6,810.6 months during the Class Period. (*Id*. at ¶ 53.) Based on a monthly reimbursement of $90.00 for each employee, Plaintiff estimated Defendant's potential liability at $612,954.00 ($90.00 x 6810.6 months).  (*Id*.)

However, Defendants presented several defenses to this claim, most notably its assertion that because it properly reimbursed all California Employees for their business expenses.  (*Id*. at ¶ 54.) Accordingly, Plaintiff discounted these maximum amounts by 25% for risk of non-certification, and by an additional 40% for risk of losing on the merits or not recovering the maximal penalty, to arrive at a projected exposure of $275,829.30.  (*Id*.)

(6)    PAGA Penalties

Plaintiff estimated a total potential PAGA exposure of $3,031,750, calculated from 26 pay periods during the relevant time period (i.e., for one year prior to the filing of the lawsuit) for each alleged violation of the California Labor Code as alleged in Plaintiff's SAC.  (*Id*. at ¶ 58.)

As noted, these penalties derived from the underlying violations discussed herein, each of which Defendants vigorously dispute. S*ee, e.g., Green v. Lawrence Service Co.*, 2013 WL 3907506, \*5, fn. 5 (C.D. Cal. 2013) (explaining a PAGA claim's success is determined by merits of underlying claims). Moreover, the PAGA specifically grants courts the power to reduce PAGA penalties in the court's discretion.  *See* Cal. Labor Code § 2699(e)(2); *see also Fleming v. Covidien*, *Inc*., 2011 WL 7563047, \*4 (C.D. Cal. 2011), (reducing PAGA penalties from $2.8 million to $500,000); *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112, 1135 (2012) (affirming reduction of maximum PAGA penalties); *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 529 (2018) (90% reduction).

1   Accordingly, Plaintiff discounted this maximum amount by 50% for the risk of losing on the

2   merits, and an additional 80% for risk of the Court reducing the awarded penalties, for a projected

3   exposure of $303,175.  (*Id*. at ¶ 62.)

4                       ***b)   The risk of maintaining class action status***

5   The risk of maintaining class action status through trial supports preliminary approval.  A class

6   has not been certified in this case, and Defendants will oppose certification if the case proceeds.  *See*

7   *In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18,

8   2013).  Indeed, Defendants would argue that individual questions predominate over common questions

9   with regard to exposure, reliance, materiality, causation, and injury.  Although Plaintiff asserts that

10  certification is appropriate here, the risk remains that the Court could refuse to certify a class.  In that

11  event, putative class members would receive nothing.  And even if the Court did certify a litigation

12  class, Plaintiff would still face potential review on appeal, and would need to prove his claims at trial,

13  which carries serious expense and further delay—potentially delaying recovery for years.  Likewise,

14  Plaintiff would continue to face the risk that a "district court may decertify a class at any time."

15  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).  The proposed Settlement allows

16  Plaintiff and Settlement Class Members to avoid these risks, additional expenses, and delays in favor

17  of immediate recovery.

18                       ***c)   The amount offered in settlement***

19  Plaintiff and his counsel secured for the Settlement Class a gross Settlement fund of

20  $1,550,000.00, which is reasonable in relation to potential trial damages for the Settlement Class.

21  Using these estimated figures outlined in detail above in Section IV(B)2(a), Plaintiffs estimated

22  that their total realistic recovery, would be approximately $2,204,510.04. (Valles Decl., ¶75.) Thus,

23  the proposed settlement amount of $1,550,000 represents approximately 70% of reasonably

24  recoverable potential damages. *Id*. The percentage of liability exposure recovered in this case far

25  exceeds percentages routinely approved by courts. *See, e.g., Glass v. UBS Finan. Servs.*, 2007 WL

26  221862, *4 (C.D. Cal. 2007) (approving settlement which represented 25% to 35% of potential

27  damages); *Dunleavy v. Nadler,* 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement which

28  represented "roughly one-sixth of the potential recovery"); *Nat'l Rural Telecomm. Coop. v. DirecTV,*

*Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial"). Given the litigation risks involved, the proposed settlement is well within the realm of being fair, reasonable, and adequate

### 3. Extent of discovery completed and stage of proceedings

During and prior to mediation, Defendants produced, and Plaintiff reviewed information and data related to the Class Members and Aggrieved Employees, including the aggregate number of workweeks/pay periods, the average hourly rate of employees, and the total number of employees for each of Plaintiff's proposed classes, among other things, to ensure a fruitful mediation and ultimately resulted in the Settlement. (Valles Decl., ¶¶ 18-19). Plaintiff thus has conducted sufficient informal discovery to permit Plaintiff's counsel and the Court to intelligently and fairly evaluate the fairness and adequacy of the Settlement. This favors preliminary approval.

### 4. View of class counsel

Class Counsel, who are experienced in wage and hour class action litigation, believe the Settlement represents an outstanding recovery for the Class Members given the risks of continuing the litigation. (Id. at ¶¶ 75, 79-81). "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528.

### 5. Government participation, class member reactions, and other cases affected

There is no government participant and, because the Court has not yet approved the Class Notice, the Class has not had an opportunity to react, so these factors are neutral. *See Hillman v. Lexicon Consulting, Inc.*, 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2019). Moreover, Class Counsel is aware of no other cases that will be affected by the Settlement. (Valles Decl., ¶ 96).

### C. The PAGA payment is fair and reasonable.

The PAGA Penalty Payment of $155,000 allocated from the GSA is both fair and reasonable. Under this allocation, the LWDA will receive $116,250.00 (75%) and the Aggrieved Employees will receive $38,750.00 (25%). Courts have significant discretion to reduce civil penalties under PAGA.

*See* Cal. Lab. Code § 2699(e)(2) (". . . a court may award a lesser amount than the maximum civil penalty amount specified by this part if . . . to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory"). Indeed, courts routinely reduce the maximum penalty even if liability is found at trial. *See, e.g.*, *Carrington,* 30 Cal. App. 5th at 529. Thus, the $155,000 PAGA Penalty Payment should be approved.

### D.    The proposed compensation to Class Counsel is fair and reasonable.

The compensation sought for Class Counsel is also fair and reasonable. "Ordinarily, [in common fund cases,] fee awards range from 20 percent to 30 percent of the fund created." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). The Ninth Circuit has also directed that courts should assess the fairness, reasonableness, and adequacy of a proposed fee award based on a "benchmark" of 25% of the total fund, which may be adjusted based on the circumstances of a particular case. *See, e.g.*, *id.*; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2022); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

The percentage of recovery method "rests on the presumption that persons who obtain benefits of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Staton*, 327 F.3d at 967. This rule, known as the "common fund doctrine," is designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel. *Paul, Johnson, Alston & Hunt*, 886 F.2d at 271. As such, it is only fair that every Class Member who benefits from the Settlement pay his or her *pro rata* share of attorneys' fees, and Plaintiff's request for fees at 33.33%, in view of common fund settlement to be fully paid out, is reasonable in this case.

Plaintiff's intended attorneys' fees request for $516,666.67, one third of the GSA, is fair, adequate, and reasonable under the percentage of the fund approach. Arguably, it would be unfair to compensate Class Counsel at a lesser rate because they obtained relief for hundreds of Class Members. Thus, while Class Counsel agree to submit their hours for purposes of a lodestar cross-check consistent with this Court's requirements, Plaintiff submits that an award based on a percentage of the common fund method is reasonable. (Valles Decl., ¶ 85).

Equitable considerations also dictate that Class Counsel should be rewarded for achieving a

valuable settlement without protracted litigation.  Indeed, several courts have expressed frustration with the lodestar approach for deciding fee awards, which usually involves wading through voluminous, and often indecipherable, time records.  Commenting on the lodestar approach, Judge Marilyn Hall Patel wrote in *In re Activision Securities Litigation*, 723 F. Supp. 1373,1375 (N.D. Cal 1989),

> This court is compelled to ask, 'Is this process necessary?'  Under a cost-benefit analysis, the answer would be a resounding, 'No!'  Not only do the Lindy Kerr-Johnson analyses consume an undue amount of court time with little resulting advantage to anyone, but in fact, it may be to the detriment of the class members. They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fee petition.  Or, class members may suffer a further diminution of their fund when a special master is retained and paid from the fund.  Most important, however, is the effect the process has on the litigation and the timing of settlement.  Where attorneys must depend on a lodestar approach, there is little incentive to arrive at an early settlement.

The Ninth Circuit has similarly recognized that the lodestar method "creates incentives for counsel to spend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement." *Vizcaino*, 290 F.3d at 1050, n.5.  The Ninth Circuit has thus cautioned that, while a lodestar may be used as a crosscheck on the reasonableness of a percentage fee method if a district court in its discretion chooses to do so, a lodestar calculation is not required and "class counsel should [not] necessarily receive a lesser fee for settling a case quickly." *Id.*  Thus, district courts in the Ninth Circuit recognize that a crosscheck need not be performed where counsel achieves a significant result through an early settlement.  *See, e.g.*, *Lewis v. Starbucks Corp.*, 2008 WL 4196690 (E.D. Cal. 2008) (favoring percentage method over lodestar for settlements achieved at relatively early litigation stages); *Glass v. UBS Fin. Servs.*, Inc., 2007 WL 221862 (N.D. Cal. 2007) (opining that lodestar crosscheck would unfairly penalize counsel for settling the case without protracted litigation).  Accordingly, because this case presents considerable risks, coupled with the ensuing risks of lengthy appeals and risk of no recovery, the excellent result achieved by Class Counsel shows that the amounts allocated to both attorneys' fees and litigation expenses under the Settlement warrant preliminary approval.

**E.    The proposed Enhancement Award is fair and reasonable.**

Incentive payments reward the named plaintiff for the time and effort expended on behalf of the class, and for exposing himself to the significant risks of litigation.  "Courts routinely approve

incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *See, e.g.*, *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving incentive awards of $300,000 to each named plaintiff in recognition of services to class by responding to discovery, participating in mediation process and taking the risk of stepping forward); *Van Vranlcen v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award).  Here, the value of this $15,000 award, if approved, is nominal compared to the total amount, is fair compensation to Plaintiff, and is justified by the following:

### 1.    Release of all claims

Unlike the absent Class Members, Plaintiff has provided Defendants with a separate full release of any and all claims he may have against them.  This is a significant sacrifice.  By agreeing to settle the case in the best interest of the Class, Plaintiff has given up the right to pursue individual claims to recover more in unpaid wages, unpaid commissions, unpaid meal and rest period premium wages, interest, waiting time penalties, pay stub penalties, and civil penalties that he will release as part of the Settlement.

### 2.    Fiduciary responsibilities

Plaintiff spent many hours on work related to this lawsuit.  As Class Representative, he assumed a fiduciary role to the class.  Additionally, as Class Representative, Plaintiff agreed to (1) consider the interests of the Class just as he would consider his own interests and, in some cases, to put the interests of the Class before his own; (2) actively participate in the lawsuit, as necessary, by among other things, answering interrogatories, producing documents to Defendants and giving depositions and trial testimony if requested; (3) travel to give such testimony; (4) recognize and accept that any resolution of the lawsuit by dismissal or Settlement, is subject to court approval, and must be designed in the best interest of the Class as a whole; (5) follow the progress of the lawsuit and provide all relevant facts to Class Counsel; (6) champion many other people with similar claims and injuries because of the importance of the case and the necessity that all Class Members benefit from the lawsuit; and (7) fight for a resolution in which the individual recoveries to each Class Member maybe relatively small.  Plaintiff agreed to shoulder all of these responsibilities in exchange for a

proportionate share of funds made available for distribution to the Class. He had no guarantee of an incentive award.

### 3.    Class counsel depended heavily on Plaintiff's input

Plaintiff made this case possible for a number of reasons. First, he challenged his former employer on an allegedly unlawful practice that resulted in this Settlement. Plaintiff provided Class Counsel with detailed descriptions of how Defendants' business operates, and the hours and scheduling of the employees. Plaintiff assisted his counsel extensively by spending considerable amounts of time working with them to develop and investigate the claims, meeting with his counsel in person and by phone, gathering witness identities and contact information, and connecting them with Class Counsel for interviews, and participating in the mediation session. Attorneys in wage and hour class actions rely heavily on class representatives to develop their claims, especially in cases where the only evidence is the testimony of the plaintiffs and the witnesses they connect their attorneys with. (Valles Decl., ¶ 88; Seibert Decl., ¶ 12).

### 4.    The public record of this lawsuit may impair future employment opportunities

By virtue of this lawsuit, Plaintiff now has a public record that he sued a former employer over unpaid wages. The stigma of this filing may jeopardize his future employment opportunities. Common sense dictates that an employer will think twice about hiring someone who sued his former employer. California even has laws to address this risk: California Labor Code § 1102.5 prohibits retaliation against employees who speak up about Labor Code violations and California Labor Code § 98.6 prohibits discrimination against employees who bring Labor Code violations to the attention of the Labor Commissioner. Thus, the risk to Plaintiff's future shows that the Enhancement Award sought is fair, adequate, and reasonable, and warrants preliminary approval of the Court.

### 5.    The low individual burden on each Class Member justifies the Enhancement Award

The burden on each Class Member to pay the Enhancement Award to Plaintiff is extremely modest. As of November 17, 2023, there were approximately 46 employees in the Commissioned Employees Class and 277 employees in the California Employees Class. Dividing the $15,000.00

Enhancement Award evenly among the Class Members yields a per Class Member payment of only $46.44 ($15,000/323 Total Class Members).  The average amount a California Sales Employee Settlement Class Member may receive as a result of the Settlement is approximately $16,920.29 ($778,333.33 NSA/46 Class Members).  The average amount a California Employee Settlement Class Member may receive as a result of the Settlement is approximately $722.02 ($200,000.00 NSA/277 Class Members).  For an average Class Member, this is an extremely small price to pay to have someone else prosecute the absent Class Member's claims and bear the absent Class Member's risk of an adverse cost award while the absent class member simply waits to receive his share of the winnings.

### F.    The Notice Program Provides the Best Notice Practicable.

Fed. R. Civ. P. 23(c)(2)(B) requires that, in any case certified under Rule 23(b)(3), the court must direct that class members be given the "best notice practicable" under the circumstances.  This does not require that each class member receive "actual notice."  *Silber v. Mahon*, 18 F.3d 1449, 1454 (9th Cir. 1994).  Rather, it suffices if the manner in which notice is disseminated to class members is "reasonably calculated, under all the circumstances, to apprise [them] of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  In addition, Rule 23(c)(2)(B) sets forth requirements regarding the content of the notice.  The notice must concisely and clearly state in plain, easily understood language:  (1) the nature of the action; (2) the definition of the class certified; (3) the claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and (6) the binding effect of a class judgment on class members under Rule 23(c)(3).  Here, the notice procedure set forth in the Settlement (and summarized above) and related Class Notice conform to these standards.  Thus, this Court should direct that notice be given to Class Members in the manner agreed upon by the Parties in accordance with the Settlement.

## VI.    FINAL APPROVAL HEARING

The last step in the settlement approval process is the fairness hearing, where Class Members who timely submit objections to the Settlement may be heard, and this Court makes a final

determination about the propriety of the Settlement.  Based on the timetables for giving notice, submitting claims and making objections to the Settlement, Plaintiff requests that the final approval hearing in this case be scheduled during May 2025 or any other date convenient for this Court.

**VII.    CONCLUSION**

For the reasons stated above, Plaintiff respectfully requests that the Court (1) preliminarily approve the proposed Settlement; (2) certify the Settlement Class for settlement purposes only; (3) direct notice to the Settlement Class through the proposed notice program; (4) appoint Plaintiff's counsel as Class Counsel and Plaintiff as Class Representatives; and (5) schedule the final approval hearing.

Dated:  November 4, 2024                                   **VALLES LAW, P.C.**

By: _____
Daniel Valles
Kayla M. Rathjen
Attorney for Plaintiff
MATT SEIBERT, ON BEHALF OF
HIMSELF, AND ALL OTHERS
SIMILARLY SITUATED