Daniel Valles (SBN 269137)
Kayla M. Rathjen (SBN 330046)
**VALLES LAW, P.C**
1230 Rosecrans Avenue, Suite 300
Manhattan Beach, CA 90266
Telephone:   (415) 234-0065
Facsimile:    (510) 369-2075

Attorneys for Plaintiff
MATT SEIBERT, ON BEHALF OF HIMSELF,
AND ALL OTHERS SIMILARLY SITUATED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATT SEIBERT, an individual on behalf of himself, and all others similarly situated;<br><br>    Plaintiff,<br><br>    v.<br><br>SS&C TECHNOLOGIES, INC., a Delaware corporation, INTRALINKS, INC., a Delaware corporation, and DOES 1 to 100, inclusive;<br><br>    Defendants. | Case No. 4:23-cv-00279-DMR<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT**<br><br>Hearing Date:    December 11, 2025<br><br>Time:                1:00 p.m.<br><br>Courtroom:        4, 3rd Floor<br><br>Judge:              Hon. Donna M. Ryu |

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................ 1

II.  FACTUAL AND PROCEDURAL HISTORY .................................................... 2

III. SUMMARY OF SETTLEMENT TERMS ........................................................... 4

   A.  THE CLASS AND AGGRIEVED EMPLOYEE DEFINITIONS ................................. 4

   B.  GROSS SETTLEMENT AMOUNT ......................................................................... 5

   C.  RELEASE OF CLAIMS ........................................................................................ 6

   D.  PAGA PENALTY PAYMENT ............................................................................... 7

   E.  ATTORNEYS' FEES AND LITIGATION EXPENSES ............................................. 8

   F.  SETTLEMENT ADMINISTRATOR ........................................................................ 8

   G.  PAYMENT TO SETTLEMENT CLASS MEMBERS ................................................. 8

IV.  THE NOTICE PROGRAM ................................................................................... 9

V.   COURT'S PRELIMINARY APPROVAL ORDER ........................................ 10

VI.  MAILING COMPLETION DETAILS ............................................................... 11

VII. FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ............. 11

   A.  LEGAL STANDARD ......................................................................................... 11

   B.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ............................ 13

      1.  Rule 23(a) is satisfied ........................................................................... 13

      2.  This case also satisfies the requirements of Rule 23(b)(3). ................ 18

   C.  THE COURT SHOULD APPROVE THE SETTLEMENT BECAUSE IT IS FAIR, REASONABLE, AND

   ADEQUATE ........................................................................................................... 20

      1.  Rule 23(e)(2)(A):  The Class Representatives and Class Counsel Have Vigorously

      Represented the Class ................................................................................. 22

      2.  Rule 23(e)(2)(B): The Settlement Was Negotiated at Arm's Length ..... 22

      3.  Rule 23(e)(2)(C): The Settlement Provides Meaningful and Substantial Relief to the Class.

         24

      4.  Terms of Proposed Attorneys' Fees and Expenses ............................... 28

      5.  No Other Agreements ............................................................................. 28

6.    *Rule 23(e)(2)(D): The Settlement Treats All Class Members Equitably* ............................ 29

7.    *All Other Factors Weigh In Favor of Approving the Settlement* ........................................ 29

D.    THE PAGA PAYMENT IS FAIR AND REASONABLE. .................................................... 29

E.    THE PROPOSED ENHANCEMENT AWARD IS FAIR AND REASONABLE. ..................................... 30

**VIII.    CONCLUSION** ........................................................................................................... **30**

# TABLE OF AUTHORITIES

## CASES

*Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007) --------------------------------------12

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618-20 (1997) ---------------------------------------20

*Avila v. Ardian Corp.*, No. 18-CV-4795 (FB) (TAM), 2022 WL 3370024, at *2 (E.D.N.Y. Aug. 16, 2022) ------------------------------------------------------------------------------------------14

*Baldwin & Flynn v. Nat'l Safety Assoc.*, 149 F.R.D. 598, 600 (N.D. Cal. 1993)------------------------13

*Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975) ------------------------------------- 13, 18

*Carlotti v. ASUS Comput. Int'l*, No. 18-CV-03369-DMR, 2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ---------------------------------------------------------------------------------22, 23, 27

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) ---------------------12

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)----------------------------------11

*Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013) ---------------------------------------------------26

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) -----------------------------14

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ---------------------------------------------13

*Eisenberg v. Gagnon*, 766 F.2d 770, 785-86 (3d Cir. 1985) ------------------------------------------14

*Elkins v. Equitable Life Ins. of Ia.*, 1998 WL 133741 at *19 (M.D. Fla. 1998) ------------------------20

*G. F. v. Contra Costa Cnty.*, No. 13-cv-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ------------------------------------------------------------------------------------------23

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) -------------------------------------12

*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)-------------------------------------16

*In re Activision Secur. Litig.*, 621 F.Supp. 415, 428 (N.D. Cal. 1985)---------------------------------16

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-48 (9th Cir. 2011) --------------------23

*In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327 (D. N.J. 2002)--------------------26

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 568-70 (9th Cir. 2019) (*en banc*)--------- 13, 20

*In re Immune Response Secur. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007)------------------21

*In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ------------------------------------------------------------------------------------------27

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ----------------------------------------------11

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 2672, 2017 WL
    672727, at *20 (N.D. Cal. Feb. 16, 2017)------------------------------------------------------------------9, 19

*Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) --------------------------------------30

*Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012)
    ----------------------------------------------------------------------------------------------------------------------24

*Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017)--------------------------------------25

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009) -------------------23

*Linney v. Cellular Ala. P'Ship*, 1997 WL 450064, at *5 (N.D. Cal. 1997) ----------------------------21

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152,
    1162 (9th Cir. 2001) ------------------------------------------------------------------------------- 18, 19

*Lozano v. AT&T Wireless*, 504 F.3d 718, 734 (9th Cir. 2007)------------------------------------------16

*Murray v. GMAC Mortgage Corp.*, 483 F. Supp. 2d 636, 643 (N.D. Ill. 2007) -------------------------16

*O'Connor v. Uber Techs., Inc.*, No. 13-03826, 2019 WL 1437101, at *14 (N.D. Cal. Mar. 29, 2019)
    ----------------------------------------------------------------------------------------------------------------------28

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th
    Cir. 1982)------------------------------------------------------------------------------------------------- passim

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ------------------------------------------------19

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) --------------------------------------27

*Shin v. Plantronics, Inc.*, No. 18-CV-05626-NC, 2020 WL 1934893, at *3 (N.D. Cal. Jan. 31, 2020)
    ----------------------------------------------------------------------------------------------------------------------20

*Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ----------------------------------------- 12, 21

*Struhe v. Amer. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) ----------------------20

*Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) -----------------------------------19

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ------------------------------------11

*Van Vranlcen v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995)----------------------------30

*Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261 SBA (EMC), 2012 WL 5878390, at *6
    (N.D. Cal. Nov. 21, 2012)----------------------------------------------------------------------------------23

1  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)------------------------------------------------------12

2  *Wang v. Chinese Daily News*, 231 F.R.D. 602, 613 (C.D. Cal. 2005) ------------------------------------18

3  *Weiss v. York Hospital*, 745 F.2d 786, 808 (3d Cir. 1984) -------------------------------------------------14

4  *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001) ------------------------18

5                                                    S<small>TATUTES</small>

6  Cal. Lab. Code § 2699(e)(2) ----------------------------------------------------------------------------- 26, 29

7  Cal. Lab. Code § 2699(g) ---------------------------------------------------------------------------------------26

8  Cal. Lab. Code §203 --------------------------------------------------------------------------------------- 24, 26

9  Cal. Lab. Code §226(e)------------------------------------------------------------------------------------ 24, 26

10  Private Attorney General Act Cal., Lab. Code § 2698 *et seq*. ("**PAGA**")--------------------------------- 1

11                                                    R<small>ULES</small>

12  Fed. R. Civ. P. 23(a)(1)------------------------------------------------------------------------------------------14

13  Fed. R. Civ. P. 23(a)(2)------------------------------------------------------------------------------------------14

14  Fed. R. Civ. P. 23(a)(3)------------------------------------------------------------------------------------------16

15  Fed. R. Civ. P. 23(a)(4)------------------------------------------------------------------------------------------17

16  Fed. R. Civ. P. 23(b)---------------------------------------------------------------------------------------------12

17  Fed. R. Civ. P. 23(b)(3) ------------------------------------------------------------------------------2, 18, 19, 26

18  Fed. R. Civ. P. 23(b)(3)(A)–(C)-------------------------------------------------------------------------------20

19  Fed. R. Civ. P. 23(b)(3)(D) ------------------------------------------------------------------------------------20

20  Fed. R. Civ. P. 23(e) -----------------------------------------------------------------------------------------1, 21

21  Fed. R. Civ. P. 23(e) 2003 Advisory Committee Notes--------------------------------------------------28

22  Fed. R. Civ. P. 23(e)(2)----------------------------------------------------------------------------- 2, 12, 21

23  Fed. R. Civ. P. 23(e)(2)(C)-------------------------------------------------------------------------------------24

24  Fed. R. Civ. P. 23(e)(2)(C)(ii) ---------------------------------------------------------------------------------27

25  Fed. R. Civ. P. 23(e)(2)(C)(iii) --------------------------------------------------------------------------------28

26  Fed. R. Civ. P. 23(e)(2)(C)(iv) --------------------------------------------------------------------------------28

27  Fed. R. Civ. P. 23(e)(4)------------------------------------------------------------------------------------------ 2

28  Fed. R. Civ. P. Rule 23(a)-------------------------------------------------------------------------------------2, 12

#### TREATISES

Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 10573 (Rutter

Group 2006)------------------------------------------------------------------------------------------------13

#### LOCAL RULES

Northern District's Procedural Guidance for Class Action Settlements, Final Approval § 1---------29

1    **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

2         **PLEASE TAKE NOTICE** that on December 11, 2025, at 1:00 p.m., or as soon thereafter as

3    the matter may be heard, in Courtroom 4, Plaintiff Matt Seibert ("**Plaintiff**") moves, pursuant to

4    Federal Rule of Procedure 23, for final approval of the class and Private Attorneys General Act of

5    2004 ("**PAGA**") action settlement on the terms and conditions set forth in the Joint Stipulation of

6    Class and PAGA Representative Action Settlement and Release (the **"Settlement"** or **"Settlement**

7    **Agreement**") and the plan of allocation, and awarding attorneys' fees, litigation expenses, and an

8    enhancement award to Plaintiff.  A copy of the Settlement Agreement is attached as **Exhibit A** to the

9    Declaration of Daniel Valles.

10        This Motion is based on this Notice of Motion and Motion, the Declaration of Chantal Soto-

11   Najera on behalf of CPT Group, the Declaration of Daniel Valles in support of Plaintiff's Motion for

12   Attorneys' Fees, Reimbursement of Expenses, and Plaintiff's Enhancement Award filed herewith,

13   Plaintiff's Motion for Attorneys' Fees, Reimbursement of Expenses, and Plaintiff's Enhancement

14   Award filed herewith, the pleadings, records, and files in this action; and any other and further

15   evidence and argument as the Court may request or otherwise be presented at the time of the hearing.

16        Plaintiff respectfully asks the Court for an order granting final approval of the proposed

17   settlement and plan of allocation, and awarding attorneys' fees, litigation expenses, and an

18   enhancement award to Plaintiff, as described in further detail in the accompanying memorandum of

19   law.

20                                              **VALLES LAW, P.C.**

21   Dated: November 3, 2025

22                                              By: _____

23                                                 Daniel Valles
                                                   Kayla M. Rathjen

24                                                 Attorneys for Plaintiff
                                                   MATT SEIBERT, ON BEHALF OF
25                                                 HIMSELF, AND ALL OTHERS
                                                   SIMILARLY SITUATED

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and this Court's June 20, 2025, Order Granting Preliminary Approval (Dkt. 52) ("**Preliminary Approval Order**"), Plaintiff Matt Seibert ("**Plaintiff**" or the "**Class Representative**") respectfully moves for final approval of the Class and PAGA Action Settlement Agreement reached with Defendants SS&C Technologies, Inc. ("**SS&C**") and Intralinks, Inc. ("**Intralinks**") (collectively, the "**Defendants**").  After more than a year of litigation and months of arm's-length settlement negotiations including a mediation with David Rotman, the Parties resolved their class-wide claims against Defendants on January 10, 2024.

The proposed Settlement will provide significant and meaningful monetary relief to all of Defendants' commissioned sales employees in the state of California (the "**California Commissioned Employees**") as well as Defendants' California employees ("**California Employees**") for various violations of the California Labor Code as both a class action and as a representative action under the Private Attorney General Act Cal., Lab. Code § 2698 *et seq*. ("**PAGA**").  Class Members will recover from a $1,929,130.00 Settlement Fund,[1] which will be distributed to the California Commissioned Employees and California employees based on their number of Eligible Workweeks during the applicable Class Periods and PAGA Periods after the deduction of Settlement Administration Costs, Class Counsel's Attorneys' Fees, and Litigation Expenses, Plaintiff's Enhancement Award and the PAGA Penalties to be paid to the California Labor and Workforce Development Agency ("**LWDA**").[2]

The notice campaign has been successful.  (*See* Declaration of Chantal Soto-Najera on behalf of CPT Group ["**Soto-Najera Decl.**"].).  Direct mail notice and email notice (for those individuals where an email address was available) was sent to 316 potential Class Members.  (*Id.* at ¶4).  A straightforward settlement website (https://www.cptgroupcaseinfo.com/SSandCSettlement/), toll free hotline (1-888-330-4054), dedicated email address (SSandCSettlement@cptgroup.com), and fax number (949-419-3446) have made claims easy to complete, while providing Class Members with

---

[1] The Settlement Agreement's Escalator provision (Section X of the Settlement Agreement) was triggered as the aggregate workweeks for the Class Members at the close of the Class Period exceeded 43,579 workweeks and Defendants elected to increase the GSA in accordance with Section X to cover the additional workweeks through the close of the Class Period thereby increasing the GSA from $1,550,000 to $1,929,130.00.  All other numbers have been adjusted accordingly as well.

[2] All capitalized terms are defined in the Settlement Agreement.

detailed information about the litigation and terms of the proposed Settlement. (*Id.* at ¶2). Indeed, none of the notices was returned as undeliverable after remailing and not one single Class Member has opted out of the Settlement. (*Id.* at ¶7-12). Moreover, in that same regard, not one single Class Member has objected or provided notice that they will be objecting to the Settlement either. (*Id.*).

Therefore, for the reasons discussed below, the Settlement warrants final approval because, for the purposes of settlement: (1) the Class (defined below) meets all requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure for class certification; (2) Plaintiff and his counsel ("**Plaintiff's Counsel**" or "**Class Counsel**") are adequate to represent the Class; (3) the Settlement bears all requisite indicia of fairness, reasonableness, and adequacy as required by Rule 23(e)(2); and (4) the notice procedure and related forms comport with Rule 23 and due process requirements

## II.    FACTUAL AND PROCEDURAL HISTORY[3]

On October 12, 2022, Plaintiff filed a PAGA Notice with the LWDA. Thereafter, on October 21, 2022, Plaintiff filed his proposed class action complaint against Defendants, as alleged joint employers, in San Francisco Superior Court seeking to represent California Commissioned Employees and California Employees in various causes of action. (*See* Dkt. 1). On December 19, 2022, Plaintiff filed his First Amended Complaint adding a PAGA representative claim. (*See* Dkt. 1).

On January 19, 2023, Defendants removed the case to the United Stated District Court for the Northern District of California. (Dkt. 1). Then, on January 26, 2023, Defendants moved to partially dismiss Plaintiff's complaint. (Dkt. 13). On March 7, 2023, Defendant's Motion was granted in part and denied in part. (Dkt. 7). Thereafter, on March 20, 2023, Plaintiff filed his Second Amended Complaint ("**SAC**"), which is the operative complaint in this matter. (Dkt. 18).

In summary, the SAC asserts that Defendants misclassified their employees that were eligible to earn commissions as exempt from overtime requirements under California law in violation of Wage Order 4 and, as a result of the alleged misclassification, Defendants failed to provide those employees overtime, meal and rest breaks, minimum wages, accurate wage statements, one day of rest in seven days, and all wages upon discharge as well as failing to timely pay all of their wages. Plaintiff also

---

[3] A more extensive description of the factual and procedural history is included in Plaintiff's motion for preliminary approval (Dkt. 35), the Declaration of Daniel Valles in support thereof (Dkt. 35), the Declaration of Matt Seibert in support thereof (Dkt. 35) and the Supplemental Brief (Dkt. 45),

alleged that Defendants failed to comply with California's law requiring written commission agreements and failed to pay earned commissions in a timely manner. Plaintiff additionally alleged that Defendants failed to provide sick leave to all non-exempt employees, including allegedly misclassified commissioned employees. Finally, Plaintiff alleged that Defendants failed to reimburse their California-based employees for business use of cell phone, home internet, or other work-from-home expenses as well as failed to timely provide them with access to their employment records.

Defendants specifically and generally deny any and all liability or wrongdoing of any sort with respect to any and all of the claims alleged in the action, including Plaintiff's operative SAC, and make no concessions or admissions of liability of any sort. Defendants maintain that for any purpose other than settlement, the Action is not appropriate for class or representative treatment and that, had this matter proceeded through litigation, it would be uncertifiable and unmanageable. Nonetheless, Defendants have concluded that further litigation would be protracted, distracting, and expensive, and that it was desirable to settle the matter.

While Plaintiff believes he would overcome Defendants' defenses, Plaintiff acknowledges that there is significant risk as to whether he can certify or prove his claims on a class or representative basis and whether he can overcome Defendants' defenses to each of his claims. As a result, Plaintiff and Class Counsel think the Settlement is in the best interest of the Class as well.

Because the Parties believed that settlement was in the best interest of the Parties, the Parties agreed to private mediation with David A. Rotman and, on November 17, 2023, the Parties engaged in a full day mediation session with Mr. Rotman, who has extensive experience in labor and employment litigation. (Dkt 35-1, ¶23.). During and prior to mediation, Defendants produced information and data related to the Commissioned Employee Class and California Employee Class (as such terms are defined below), including the aggregate number of workweeks/pay periods, the average hourly rate of employees, and the total number of employees for each of Plaintiff's proposed classes. (*Id.*). The Parties were not able to resolve their disputes at the mediation, but Mr. Rotman continued to engage with the Parties and issued a mediator's proposal that was ultimately accepted by the Parties on January 10, 2024, after continued extensive negotiations by the Parties. (Dkt 35-1, ¶ 24.)

After the Parties reached a preliminary agreement with respect to the general settlement terms,

the Parties continued to hash out the terms of the settlement over the following months with a final settlement not being agreed to until September of 2024. (Dkt. 35-1, Ex. A). Thereafter, Plaintiff's counsel drafted the preliminary approval paperwork and moved this Court on November 5, 2024, for preliminary approval of the Settlement. (Dkt. 35). After holding a hearing on the matter on January 23, 2025, the Court requested supplemental briefing and an amended class notice (Dkt. 44), which was submitted by the parties on February 28, 2025 (Dkt 45). On June 12, 2025, the Court held a second hearing requesting further amendments to the class notice, a supplemental declaration regarding adequacy of Kayla Rathjen as class counsel and an amended proposed order (Dkt. 48). The Parties submitted the Court's requested documents on June 13, 2025 (Dkt. 49, 50, and 51). Thereafter, the Court granted preliminary approval of the Settlement on June 20, 2025, preliminarily certifying the settlement Classes, appointing the named Plaintiff as Class Representative, appointing Daniel Valles and Kayla Rathjen of Valles Law, P.C. as Class Counsel, appointing CPT Group as settlement administrator, approving the form and manner of notice to the Class, and scheduling all remaining dates and deadlines pertaining to approval of the Settlement, including a final approval hearing (Dkt. 52). On August 5, 2025, the Parties submitted a stipulation to continue the settlement administration deadlines and final approval hearing date (Dkt 54), which the Court approved of on August 6, 2025 (Dkt. 54).

III.    **SUMMARY OF SETTLEMENT TERMS**

The key terms of the Settlement are discussed and summarized below. (*See also* Amended Joint Stipulation of PAGA and Clas Action Settlement and Release - Dkt. 45, Ex. 1).

A.  **The Class and Aggrieved Employee Definitions**

The Settlement Class is defined as (i) all current and former employees who worked for SS&C or Intralinks in the State of California who were eligible to earn commissions at any time between October 21, 2018 through the date of preliminary approval of the Settlement on June 20, 2025[4] ("the **Class Period**") (the "**Commissioned Employees Class**") and (ii) all current and former employees who worked for SS&C or Intralinks in the State of California at any time during the Class Period (the "**California Employees Class**"). A "**Settlement Class Member**" means a Class Member who did

---

[4] Defendants exercised the option to extend the Class Period through the date of preliminary approval on June 20, 2025.

not timely opt out of the non-PAGA portion of the Settlement by submitting an opt-out request to the Settlement Administrator by the opt-out deadline.

Aggrieved Employees are defined as (i) all current and former employees who worked for SS&C or Intralinks in the State of California who were eligible to earn commissions at any time between October 12, 2021 through the date of preliminary approval of the Settlement on June 20, 2025 (the "PAGA Period") (the "**Commissioned Aggrieved Employees**") and (ii) all current and former employees who worked for SS&C or Intralinks in the State of California at any time during the PAGA Period (the "**California Aggrieved Employees**").  Aggrieved Employees do not have the option to opt out of the PAGA portion of the Settlement.

### B.  Gross Settlement Amount

As set forth more fully in Plaintiff's motion for preliminary approval (Dkt. 35) and Supplemental Brief (Dkt. 45), the Settlement provides substantial and meaningful monetary and injunctive relief to the Settlement Class Members.  Defendants will pay One Million Nine Hundred Twenty-Nine Thousand One Hundred and Thirty Dollars and Zero Cents ($1,929,130.00)[5], which Defendants will deposit to a Qualified Settlement Fund ("**QSF**") to be established by the Settlement Administrator.  The GSA will be used to pay Settlement Administration Costs, Class Counsel's attorneys' fees and costs, Plaintiff's Enhancement Award, the Individual Class Settlement Payments, the PAGA Settlement Payments, and the PAGA Penalties to be paid to the LWDA.  Defendants' corporate payroll tax obligations on the wage payments made to the members of the Settlement Class shall be paid in addition to the GSA.

The Settlement is non-reversionary.  Participating Class Members will have 180 days from the date of mailing by the Settlement Administrator to cash their settlement checks.  (*See* Dkt. 45, Ex. 1). Any checks returned as non-deliverable on or before the check cashing deadline will be sent promptly via regular First-Class U.S. Mail to the forwarding address affixed thereto.  (*Id.*).  If no forwarding address is provided, the Settlement Administrator will promptly utilize Reasonable Address Verification Measures to attempt to determine the correct address using a skip-trace, or other search using the name, address, or social security number of the Settlement Class Member or Aggrieved

---

[5] As noted above Settlement Agreement's Escalator provision (Section X of the Settlement Agreement) was triggered thereby increasing the GSA from $1,550,000 to $1,929,130.

Employee involved and will then perform a single re-mailing using an Updated Address, if available. (*Id.*). The Settlement Administrator will mail a check-cashing reminder postcard to those recipients who have not negotiated their Settlement Checks within ninety (90) calendar days of mailing. (*Id.*). Funds represented by Settlement Checks returned as undeliverable and those settlement checks remaining uncashed for more than one hundred eighty (180) calendar days after the original date of mailing shall be redistributed to participating Class Members who cashed their checks. (*Id.*). Funds represented by these redistributed Settlement Checks that remain uncashed for more than one hundred eighty (180) calendar days after the redistribution date shall be deposited to the California Controller's Unclaimed Property Fund in the name of the individual who the redistributed Settlement Check was made out to. (*Id.*). As result, the Settlement Agreement and the associated Judgment do not and will not create any unpaid residue or unpaid residual, and no distribution of such shall be required.

### C. Release of Claims

In return for the monetary relief described herein, the Class Members will release claims as follows:

- "**Commissioned Employees Class Released Claims**" include all federal, state and local law claims, rights, demands, liabilities, and causes of action that were or could have been asserted in the Action based on the same alleged facts in any complaint filed in the Action and arising during the Class Period, brought on behalf of the Commissioned Employees Class including, but not limited to, for alleged violations of California Labor Code sections 204, 210, 218.5, 226, 226.7, 246, 246.5, 248.5, 510, 512, 551, 552, 558, 558.1, 1182.12, 1194, 1194.2, 1197, 1197.1, 1198, and 2751, or any claims based on the following allegations: failure to pay overtime; failure to provide meal breaks; failure to provide rest breaks; failure to pay minimum wages; failure to timely pay wages; failure to provide accurate itemized wage statements; failure to provide one day's rest in each seven (7) day period; failure to comply with California's sick leave laws, or violation of Cal. Bus. & Prof. Code sections 17200 *et seq*. by engaging in the foregoing conduct. Commissioned Employees Class Released Claims include all claims for unpaid wages, overtime wages, statutory penalties, civil penalties, damages of any kind, interest, attorneys' fees, costs, injunctive relief, restitution, and any other equitable relief under California statute, ordinance, regulation, common law, or other source of

law, including but not limited to the California Labor Code, California Business & Professions Code, California Civil Code, and California Industrial Welfare Commission Wage Orders. (*See* Dkt. 45, Ex. 1).

- "**California Employees Class Released Claims**" include all federal, state and local law claims, rights, demands, liabilities, and causes of action that were or could have been asserted in the Action based on the same alleged facts in any complaint filed in the Action and arising during the Class Period on behalf of the California Employees Class, including, but not limited to, for alleged violations of California Labor Code sections 201, 202, 203, 221, 226(c), 300, 1174, 1174.5, 1198.5, 2800, and 2802, or any claims based on the following allegations:  failure to pay all wages earned upon discharge; unreimbursed business expenses; failure to keep required payroll records; illegal collection and receipt for any part of wages paid; illegal assignment of wages without the assignment on a separate written instrument; failure to provide timely access to employment records; or violation of Cal. Bus. & Prof. Code sections 17200 *et seq.* by engaging in the foregoing conduct.  California Employees Class Released Claims include all claims for unpaid wages, overtime wages, statutory penalties, civil penalties, damages of any kind, interest, attorneys' fees, costs, injunctive relief, restitution, and any other equitable relief under California statute, ordinance, regulation, common law, or other source of law, including but not limited to the California Labor Code, California Business & Professions Code, California Civil Code, and California Industrial Welfare Commission Wage Orders. (*See* Dkt. 45, Ex. 1).

### D. PAGA Penalty Payment

The Settlement allocates $155,000.00 of the GSA to a PAGA Penalty Payment, $116,250.00 (75%) of which will be paid to the LWDA for the enforcement of labor laws and education of employers, and $38,750.00 (25%) to Aggrieved Employees on a *pro rata* basis based on the Aggrieved Employee's number of eligible workweeks during the PAGA Period, which is defined as October 12, 2021 through the date of preliminary approval of the Settlement on June 20, 2025. (*See* Dkt. 45, Ex. 1).  The portion of the PAGA Penalty Payment distributable to the Plaintiff and Aggrieved Employees shall not be deemed wages. (*Id*.)

///

### E. Attorneys' Fees and Litigation Expenses

In accordance with the settlement terms and in a separate motion filed concurrently herewith, Class Counsel request an award of 25% of the GSA in attorneys' fees, which is Four Hundred Eighty-Two Thousand Two Hundred and Eighty-Two Dollars and Fifty Cents ($482,282.50), plus the reimbursement of actual, out of pocket litigation expenses of $10,095.24. Class Counsel also seeks an Enhancement Award of Fifteen Thousand Dollars ($15,000.00) for Plaintiff for his services as a class representative. The Agreement is neither dependent nor conditioned upon the Court's approval of the aforementioned awards, or the Court awarding the particular amounts sought.

### F. Settlement Administrator

CPT Group, Inc. ("**CPT**") is the third-party Settlement Administrator that was approved by this Court that has been administering the settlement. (Dkt. 52). In accordance with the settlement terms, the Parties request that Twelve Thousand Dollars and No Cents ($12,000.00) be paid to CPT from the GSA for their Settlement Administrator Costs. (Soto-Najera Decl. ¶17).[6]

### G. Payment to Settlement Class Members

Individual Class Settlement Payments will be made from the Net Settlement Amount ("**NSA**"), after payment of all enumerated amounts from the GSA. (*See* Dkt. 45, Ex. 1). The "**Net Settlement Amount**" means the amount remaining from the GSA after Class Counsel's court-approved attorneys' fees and costs, Plaintiff's Enhancement Award, the PAGA Penalties, and Settlement Administration Costs have been deducted from the GSA, from which the Individual Class Settlement Payments will be paid. (*Id.*). Individual Class Settlement Payments will be paid to Settlement Class Members in the form of a Settlement Check.

$200,000.00 will be allocated to make Individual Class Settlement Payments to California Employees Class Members. (*Id.*). Each Individual Settlement Payment to California Employees Class Members will be calculated *pro rata* based on the number of Eligible Workweeks each California Employees Class Member has worked during the Class Period according to Defendants' records. (*Id.*).

---

[6] In the Declaration of Julie Green that was submitted with the Motion for Preliminary Approval (Dkt. 45), CPT originally stated their costs were going to be $10,000. However, CPT's final costs came to $12,000 because of the requirements for (i) check cashing reminder postcards; and (ii) e-mail notifications to all available and valid email addresses for Class members. (Soto-Najera Decl. ¶17). However, the total amount charged by CPT Group is still less than the total approved Class administrator fees of $15,000. (See Dkt. 52).

After subtracting the Individual Class Settlement Payments to California Employees Class, the remaining Net Settlement Amount, which would presently be One Million Sixty-Six Thousand Seven Hundred and Fifty-Two Dollars and Twenty-Six Cents ($1,066,752.26), will be allocated to make additional Individual Class Settlement Payments to Commissioned Employees Class Members. (Soto-Najera Decl. ¶14). Settlement Payment will be calculated *pro rata* based on the number of Eligible Workweeks each Commissioned Employees Class Member has during the Class Period according to Defendants' records. (*See* Dkt. 45, Ex. 1).

## IV.    THE NOTICE PROGRAM

Pursuant to the Court's preliminary approval order and as described below, CPT has implemented a robust notice program, providing notice to Class Members through direct and indirect means (the "**Notice Program**"). (Soto-Najera Decl. ¶¶ 2-28). The substance of the notice approved by the Court provides a summary of the Settlement and clearly explains how Class Members may object to or opt out of the Settlement or challenge the number of workweeks they have worked during the class period, as well as how Class Members may address the Court at the final approval hearing. *See Id.*, Ex. A; *See also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 2672, 2017 WL 672727, at *20 (N.D. Cal. Feb. 16, 2017) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.").

**Direct Notice**. CPT sent direct notice via U.S. mail to 316 total Class Members as well as a copy via email to 212 Class Members for whom Defendants had an email address. (Soto-Najera Decl. ¶6). This represented 100% of the Class Members receiving notice. (*Id*. ¶¶ 4-8, 12). As of October 31, 2025, CPT is aware of zero (0) notices that could not be delivered after remailing using National Change of Address Database and skip traces to attempt to find the current address. (*Id*.).

CPT established a settlement website which contains general information about the Settlement, including important dates and deadlines pertinent to this matter, and copies of important documents including the Class Action Notice, the Amended Settlement Agreement, and the Court's Order Granting Preliminary Approval (https://www.cptgroupcaseinfo.com/SSandCSettlement/). (*Id*. ¶2). The settlement website has a "Questions" section whereby it directs Class Members to submit

questions regarding the Settlement to a dedicated email address (SSandCSettlement@cptgroup.com) or by calling a dedicated toll free hotline (1-888-330-4054) or sending a fax to a dedicated fax number (949-419-3446).  (*Id.*).  This is the same information included on the Class Notice, and Class Members could also submit their opt-outs, objections, or challenges to the number of workweeks to the foregoing email address or fax number as well.

## V.    COURT'S PRELIMINARY APPROVAL ORDER

On June 20, 2025, the Court granted preliminary approval of the Class and PAGA Action Settlement.  (Dkt. 52).  The Court found that the proposed settlement was fair, reasonable, and adequate, and directed that notice be provided to all Class Members in accordance with the terms of the Settlement Agreement.  (*Id.*).  The Court's preliminary approval order required several specific actions to be taken prior to the final approval hearing.  These originally included:

1. Defendants providing the Class Member List to the Settlement Administrator within fifteen (15) days of the preliminary approval order.

2. The Settlement Administrator mailing the approved Class Notice and Notice Packets to all Class Members within ten (10) days after receiving the Class Member List.

3. Allowing Class Members sixty (60) days from the date of mailing to dispute the number of workweeks worked during the Class or PAGA Periods, submit an Exclusion Letter, or object to the settlement.

4. Class Counsel filing their Motion for Attorneys' Fees, Costs, and Class Representative Enhancement Award, as well as their Motion for Final Settlement Approval, on or before September 18, 2025.

5. Setting the Final Approval Hearing for October 23, 2025, at 1:00 p.m. before Chief Magistrate Judge Donna M. Ryu at the U.S. District Court, 1301 Clay Street, Oakland, California.

(*Id.*)

However, on August 6, 2025, the Court granted the Parties' Stipulation Continuing Settlement Administration Deadlines and Final Approval Hearing Date.  (Dkt. 54).  The Final Approval Hearing was continued to December 11, 2025, at 1:00 p.m. before Chief Magistrate Judge Donna M. Ryu at the U.S. District Court, 1301 Clay Street, Oakland, California, and the date for Plaintiff to file his

Motion for Attorneys' Fees, Costs, and Class Representative Enhancement Award, as well as his Motion for Final Settlement Approval was extended to November 3, 2025. (*Id.*)

The Court conditionally certified, for settlement purposes only, the Commissioned Employees Class, California Employees Class, Commissioned Aggrieved Employees, and California Aggrieved Employees. (*Id*). The Court also appointed Plaintiff Matt Seibert as Class Representative, Daniel Valles and Kayla Rathjen of Valles Law, P.C. as Class Counsel, and CPT Group as Settlement Administrator. (*Id.*)

The Court approved the form and content of the Rule 23 Class Notice (Dkt. 50) and ordered that notice be mailed in accordance with the Settlement Agreement. (Dkt. 52).

## VI.    MAILING COMPLETION DETAILS

CPT has confirmed that the class notice was mailed and emailed to all identified Class Members on August 14, 2025, and completed successfully. (Soto-Najera Decl. ¶6). The notice provided detailed information about the settlement terms, the rights of Class Members, and the procedures for opting out, objecting to the settlement, or challenging the number of workweeks. (*Id.*, Ex. A).

CPT's report indicates that 316 notices were mailed, and only one (1) was originally returned as undeliverable. (*Id.* ¶7). Efforts were made to locate updated addresses for that returned notice, and it was successfully re-mailed. (*Id.* ¶¶ 7-8). As of today's date, zero Class Members have opted out, and no objections have been received. (*Id.* ¶¶ 9-11).

## VII.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A.  LEGAL STANDARD

In the Ninth Circuit, there is a "strong judicial policy that favors settlements" of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Recognizing that "[p]arties represented by competent counsel" are "positioned . . . to produce a settlement that fairly reflects each party's expected outcome in [the] litigation," courts favor approval of settlements. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

At the final approval stage, the Court's inquiry is more searching and comprehensive than at preliminary approval. The Court must determine whether the settlement is "fair, reasonable, and adequate" under Federal Rule of Civil Procedure 23(e). Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "The settlement must stand or fall in its entirety," based on the adequacy of its terms, and the Court must evaluate the substantive fairness of the settlement as well as the procedural integrity of the negotiation process. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

At this stage, the Court must also ensure that the class continues to satisfy the requirements of Rule 23(a) and (b), as approval of a settlement that takes place prior to formal class certification requires a higher standard of fairness. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1026. Thus, the Court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007) (quoting *Staton, supra*).

Under Rule 23(e)(2), as amended in 2018, a court may approve a class action settlement only after considering whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, taking into account (a) the costs, risks, and delay of trial and appeal, (b) the effectiveness of the proposed method of distributing relief, (c) the terms of any proposed award of attorneys' fees, and (d) any agreement required to be identified under Rule 23(e)(3); and (4) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

Courts in the Ninth Circuit also continue to apply the factors articulated in *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004), which consider:

(1) the strength of the plaintiffs' case;

(2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial;

(4) the amount offered in settlement;

(5) the extent of discovery completed and the stage of the proceedings;

(6) the experience and views of counsel;

(7) the presence of a governmental participant; and

(8) the reaction of the class members to the proposed settlement.

No single factor should be considered in isolation; rather, the Court must consider the settlement taken as a whole. *Officers for Justice*, 688 F.2d at 625.  Ultimately, the settlement should be approved if it is the product of arms-length negotiations conducted by capable counsel after meaningful discovery, and if it has no obvious deficiencies and falls within the range of reasonableness. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 568-70 (9th Cir. 2019) (*en banc*).

### B.  The Court Should Certify the Settlement Class

In preliminarily approving the Settlement, the Court found it will likely certify the Class pursuant to Rules 23(a) and 23(b)(3).  Since that time, nothing has changed.  Certification of the Class for purposes of settlement is now warranted.

### 1.      Rule 23(a) is satisfied.

Under the first step of the final settlement approval analysis, this Court is obligated to make an initial determination that the Class meets the class certification requirements of Rule 23.  This requires that all four Rule 23(a) prerequisites and that at least one of the three Rule 23(b) requirements be met. Plaintiff needs only make a "prima facie showing" of the requirements under Rule 23.  *See* Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 10573 (Rutter Group 2006).  In determining the propriety of class certification, a court may not delve into the underlying merits of the claims.  The fundamental question "is not whether . . . plaintiff [has] stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

Accordingly, the Ninth Circuit has established that, when ruling on the propriety of class certification, a district court "is bound to take the substantive allegations of the complaint as true." *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).  A court "may not require plaintiff to make a preliminary proof of [his] claim; it requires only sufficient information to form a reasonable judgment." *Baldwin & Flynn v. Nat'l Safety Assoc.*, 149 F.R.D. 598, 600 (N.D. Cal. 1993).  Under

these governing standards, this action meets the requirements for certification under Rule 23(a) and Rule 23(b)(3) for settlement purposes as the Court previous determined at the preliminary approval hearing.

### a)    The Settlement Class is sufficiently numerous.

To meet the Fed. R. Civ. P. 23(a)(1) numerosity requirement, the class must be "so numerous that joinder of all members is impracticable." It has consistently been held that joinder is impracticable where the class is composed of hundreds of potential claimants; indeed, impracticability of joinder has often been found where the class is composed of less than 100 members. *See, e.g.*, *Eisenberg v. Gagnon*, 766 F.2d 770, 785–86 (3d Cir. 1985) (90 class members meets numerosity requirement); *Weiss v. York Hospital*, 745 F.2d 786, 808 (3d Cir. 1984) (92 class members meets the numerosity requirement); *Avila v. Ardian Corp.*, No. 18-CV-4795 (FB) (TAM), 2022 WL 3370024, at *2 (E.D.N.Y. Aug. 16, 2022) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)) ("A proposed class of more than 40 members presumptively satisfies the numerosity requirement.").

Here, as of June 20, 2025, there are 49 employees with 5,843.52 workweeks in the Commissioned Employees Class and 316 employees with 48,624.37 workweeks in the California Employees Class. (*See* Dkt 35 and Dkt. 35-1; *see also* Soto-Najera Decl. ¶15-16). Because it would be impracticable to join all of these persons as plaintiffs in a single lawsuit, the Class meets the Rule 23(a)(1) numerosity requirement for settlement purposes.

### b)    There are common questions of law and fact.

To meet the Fed. R. Civ. P. 23(a)(2) commonality requirement, there must be "questions of law or fact common to the class." This requirement is construed "permissively'" and "the existence of shared legal issues with divergent factual predicates will suffice." *Hanlon*, 150 F.3d at 1019. As explained below, the Class meets this requirement.

Plaintiff contends that the Class Members share common questions of law and fact. In this case, as a result of working for the same employer, according to Plaintiff, Defendants incorrectly classified exempt sales employees, while subjecting them to the same general wage and hour policies and thus, Class Members share claims that call for the resolution of common legal and factual

questions.  Plaintiff contends these common questions include, but are not limited to:

- whether Defendants maintained a policy and/or practice whereby California Commissioned Employees were improperly classified as exempt from overtime as opposed to non-exempt employees;
- whether Defendants maintained a policy and/or practice of failing to pay California Commissioned Employees the legally mandated minimum-wage for all hours worked;
- whether Defendants maintained a policy and/or practice of failing to pay California Commissioned Employees their legally mandated overtime in accordance with California Labor Code § 510 for all hours worked in excess of forty (40) hours in a week, eight (8) hours in a day, or on a seventh consecutive day of a workweek;
- whether Defendants maintained a policy and/or practice of failing to provide California Commissioned Employees the meal periods to which they were entitled under California law;
- whether Defendants maintained a policy and/or practice of failing to allow California Commissioned Employees the rest periods to which they were entitled under California law;
- whether Defendants maintained a policy and/or practice of failing to pay California Commissioned Employees the additional hour of compensation owed to them under California Labor Code section 226.7 for all shifts during which a mandated meal period was not provided;
- whether Defendants maintained a policy and/or practice of failing to pay California Commissioned Employees the additional hour of compensation owed to them under California Labor Code section 226.7 for all shifts during which they were deprived a mandated rest period;
- whether Defendants maintained a policy and/or practice of failing to maintain and furnish accurate, itemized wage statements to Commissioned Employee Class Members and the California Employee Class Members in violation of California Labor Code § 226 and Wage Order 4;

- whether Defendants maintained a policy and/or practice of failing to properly pay the Commissioned Employee Class Members and the California Employee Class Members within the time limits prescribed by California Labor Code section 204;

- whether Defendants maintained a policy and/or practice of failing to properly pay former California Commissioned Employees within the time limits prescribed by California Labor Code sections 201 and 202; and

- whether Defendants' alleged violations of the California Labor Code serve as predicate violations of California Business and Professions Code §§ 17200 *et seq.*

In view of the claims asserted, Plaintiff contends the answers to these common questions will determine Defendants' *prima facie* liability to Class Members on the core minimum and overtime wages, meal and rest breaks, and commission earnings claims in this case, as well as the derivative penalties claims that flow from them. Thus, common questions predominate over questions that may be unique to individual Class Members for settlement purposes.

### c)    Named Plaintiff's claims are typical of other Class Members' claims.

Fed. R. Civ. P. 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." This refers to the nature of the representative's claim, "and not to the specific facts from which it arose." *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). As such, it is "not necessary that all class members suffer the same injury." *Lozano v. AT&T Wireless*, 504 F.3d 718, 734 (9th Cir. 2007). Rather, the test is "whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* Thus, there will be typicality where a lawsuit is based on conduct which is not unique to Plaintiff, but on a course of conduct that is common to all class members. *See, e.g.*, *Murray v. GMAC Mortgage Corp.*, 483 F. Supp. 2d 636, 643 (N.D. Ill. 2007) (finding typicality where, despite minor factual discrepancies, all class members had "the same essential characteristics"); *see also In re Activision Secur. Litig.*, 621 F.Supp. 415, 428 (N.D. Cal. 1985) (noting that "the only material variation among class members is the amount of damages to which each member is entitled" and reasoning that "[s]uch differences are insufficient to defeat class certification").

Plaintiff is typical of the Class for settlement purposes.  Plaintiff alleges he was a California Commissioned Employee for Defendants and asserts claims that flow from Defendants' alleged misclassification of the California Commissioned Employee as exempt from overtime and minimum wage requirements as well as failing to properly pay commissions due and owed to him.  Plaintiff also alleges he was a California Employee for Defendants and asserts claims that arise from Defendants' alleged failure to reimburse California Employees for all necessary business expenditures, failure to keep required payroll records, failure to timely provide access to employment records, and failure to pay all earned wages upon discharge.  Because Plaintiff alleges that he was subject to the same general course of conduct as absent Class Members, Plaintiff contends resolving these questions as they apply to Plaintiff will determine Defendants' liability to the entire Class.  Moreover, Plaintiff's claims could potentially be subject to the same primary affirmative defenses as those of absent Class Members.

Thus, Plaintiff asserts that common proof will answer the common questions recounted above for both Plaintiff and Class Members.  As such, for settlement purposes, Plaintiff is typical of Class Members in that they have the same interest in recovering unpaid wages from Defendants.

>    **d)      The Class Representatives and Class Counsel will continue to fairly**
>    **and adequately protect the Settlement Class's interests.**

Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Adequate representation turns on whether the named Plaintiff and his counsel "have any conflicts of interest with other class members," and whether he and his counsel will "prosecute the action vigorously on behalf of the class."  *Hanlon*, 150 F.3d at 1020.  Here, as discussed above, Plaintiff alleges he shares the same claims for unpaid wages, reimbursements, and related relief as the Class Members and those claims could be subject to the same defenses.  Moreover, the law firm that comprises Class Counsel has substantial experience in employment law and class action litigation and has vigorously pursued the claims on behalf of the Class.  Indeed, throughout this litigation, Class Counsel have zealously represented the interests of the Class and entered into settlement negotiations only after developing a sufficient understanding of the strengths of Plaintiff's claims and the potential risks of further litigation.  Moreover, as their supporting declarations reflect, Class Counsel has substantial experience in wage and hour litigation in California as Mr. Valles,

himself, has over fifteen (15) years of wage and hour litigation experience.  (Dkt. 35-1, ¶ 7).  Thus, Plaintiff and his counsel are adequate to represent the Class for settlement purposes.  *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (adequacy established by mere fact that counsel were experienced practitioners).

### 2.   This case also satisfies the requirements of Rule 23(b)(3).

Here, as explained below, the Class meets the requirements of Rule 23(b)(3) for settlement in that Class Members share common questions that predominate over any questions unique to individual Class Members and class action treatment is the superior means of resolving this dispute.

#### a)   *Common issues of law and fact predominate.*

The predominate inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162.  This inquiry is based on "the notion that the adjudication of common issues will help achieve judicial economy." *See, e.g., Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162.  It is well settled that the need for determining differing amounts of damages suffered by class members does not preclude class certification.  *See Blackie*, 524 F.2d at 905; *Wang v. Chinese Daily News*, 231 F.R.D. 602, 613 (C.D. Cal. 2005).

As explained above, Plaintiff submits that Class Members share predominant common questions under these standards.  Because the answers to these common questions will resolve Defendants' alleged liability to Class Members except with respect to the amounts of damages and penalties to be awarded, which may be largely calculated by reference to Defendants' company payroll records, company policies, software programs, and computer log-in records, the Class satisfies the Rule 23(b)(3) requirement for settlement purposes that common questions predominate over individual ones.

///

///

---

1              **b)**       ***A class action is the superior method for adjudicating, and settling,***

2                    ***the Plaintiff's and the Class's claims.***

3        To determine whether the superiority requirement of Rule 23(b)(3) is met, this Court must

4  compare the class action vehicle with alternative methods for adjudicating the claims at issue.  The

5  absence of a viable alternative to a class action necessarily means that a class action satisfies the

6  superiority requirement. *Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class

7  action is a superior method for managing litigation if no realistic alternative exists").  Accordingly,

8  where "a comparable evaluation of other procedures reveals no other realistic possibilities, [the]

9  superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartender Trust Fund*, 244 F.3d at

10  1162; *see also Valentino*, 97 F.3d at 1235-36.

11        Here, most of the Class Members stand to recover damages in relatively small amounts.

12  Accordingly, as in *Culinary/Bartender Trust Fund*, "this case involves multiple claims for relatively

13  small sums" and a class action clearly serves as the only method that would "'permit the plaintiffs to

14  pool claims which would be uneconomical to litigate individually.'"  244 F.3d at 1163 (quoting

15  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985)).  Moreover, Class Members would find

16  the cost of litigating individual claims to be prohibitive, especially considering the risk factors of the

17  case and the damages amounts they could reasonably expect to recover if successful.  If individual

18  lawsuits were asserted against Defendants, each Class Member "would be required to prove the same

19  wrongful conduct to establish liability and thus would offer the same evidence."  This would also leave

20  open "the possibility of inconsistent rulings and results."  *Volkswagen*, 2017 WL 672727, at *14.

21  Accordingly, the class action procedure "reduce[s] litigation costs and promote[s] greater efficiency."

22  *Valentino*, 97 F.3d at 1234.

23        A consideration of the factors listed in Rule 23(b)(3) only bolsters this conclusion.  Ordinarily,

24  these factors are (A) the interest of members of the class in individually controlling the prosecution or

25  defense of separate actions; (B) the extent and nature of any litigation concerning the controversy

26  already commenced by or against members of the class; (C) the desirability or undesirability of

27  concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be

28  encountered in the management of a class action.  When assessing these issues of predominance and

superiority, the court may consider that the class will be certified for settlement purposes only. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618-20 (1997). A showing of manageability of trial is not required in that context. *Id.* Rather, the test is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *See id.* at 623; Fed. R. Civ. P. 23(b)(3)(D).

The Class easily meets that requirement. In deciding whether to certify a class for settlement purposes, a district court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods., Inc.*, 521 U.S. at 620. In addition, the remaining factors set forth in Fed. R. Civ. P. 23(b)(3)(A)–(C) all favor the grant of class certification. The Class Members have no particular interest in individually controlling the prosecution of separate actions and any Class Member who wanted to pursue a claim for a potentially greater amount could have requested exclusion from the Settlement, but as stated above, none of the Class Members chose to do so. There is also no competing litigation regarding the claims in this case and it is desirable to concentrate the issues in this forum because Plaintiff alleges that he and the Class Members worked for Defendants in California. Finally, "[w]ith the settlement in hand, the desirability of concentrating the litigation in one forum is obvious." *Elkins v. Equitable Life Ins. of Ia.*, 1998 WL 133741 at *19 (M.D. Fla. 1998); *Struhe v. Amer. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (final two Rule 23(b)(3) factors are "conceptually irrelevant in the context of a settlement"). Thus, for settlement purposes, the conclusion is inescapable that a class action provides the most efficient mechanism for resolving the claims in this case.

### C. The Court Should Approve the Settlement Because It Is Fair, Reasonable, and Adequate.

The Ninth Circuit maintains a "strong judicial policy" that favors settlement, particularly "where complex class action litigation is concerned." *In re Hyundai*, 926 F.3d, at 556 (quotation omitted). In determining whether a court should grant final approval to a class action settlement, "the universally applied standard is whether the settlement is fundamentally fair, adequate, and reasonable." *Shin v. Plantronics, Inc.*, No. 18-CV-05626-NC, 2020 WL 1934893, at *3 (N.D. Cal. Jan. 31, 2020) (quoting *Officers for Justice*, 688 F.2d at 625).

Rule 23(e)(2) instructs that, in evaluating whether a proposed settlement is fair, reasonable, and adequate, district courts must consider whether: (1) the class representatives and class counsel have adequately represented the class, (2) the proposal was negotiated at arm's length, (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other. However, no single criterion is dispositive for whether a class settlement meets the requirements of Rule 23(e). In fact, the Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important. *See Staton*, 327 F.3d at 959. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* (internal citations omitted).

Where a settlement results from arms' length negotiations after "relevant discovery" there is "a presumption that the agreement is fair." *Linney v. Cellular Ala. P'Ship*, 1997 WL 450064, at *5 (N.D. Cal. 1997). So long as the discovery is sufficient to give the parties a clear view of the relative strengths and weaknesses of their respective cases, it need not be exhaustive. *See, e.g.*, *In re Immune Response Secur. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases). Notwithstanding any presumptions, the ultimate touchstone is whether "class counsel adequately pursued the interests of the class as a whole." *Staton*, 327 F.3d at 961. As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective. Indeed, Rule 23(e) review "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." Thus, the Ninth Circuit will not reverse a district court's approval of a settlement "unless the fees and relief provisions clearly suggest the possibility that class interests gave way to self-interest." *Staton*, 327 F .3d at 961.

Finally, we note that the Court determined in its Preliminary Approval Order that each of the Rule 23(e) factors is satisfied here (*see* Dkt. 52), but such factors are addressed here again below:

### 1.    Rule 23(e)(2)(A):  The Class Representatives and Class Counsel Have Vigorously Represented the Class

As detailed in Section II above and in Plaintiff's motion for preliminary approval, the Settlement is the culmination of over a year of hard-fought litigation.  A substantial portion of the independent investigation pertinent to the Action took place before the first complaint was filed.  *See Carlotti v. ASUS Comput. Int'l*, No. 18-CV-03369-DMR, 2019 WL 6134910, at *7 (N.D. Cal. Nov. 19, 2019).  In particular, Class Counsel spent an extensive amount of time investigating Defendants' employment and business practices before filing a detailed and thorough complaint. (Dkt. 35-1, ¶ 18). After that extensive pre-suit investigation, Plaintiff and Class Counsel worked together to prepare a comprehensive complaint. (*Id.*, ¶ 19). Class Counsel also vigorously defended against Defendants' attempts to dismiss parts of the Complaint. (*See Id.*, ¶¶ 21-22).  During and prior to mediation, Defendants produced information and data related to the Class Members and Aggrieved Employees. (*Id.*, ¶¶ 23, 25). Moreover, Class Counsel also obtained information related to Defendants' policies and procedures from current and former employees as well as information and data related to the Class Members and Aggrieved Employees. (*Id.,* ¶ 19).

At bottom, Plaintiff and Class Counsel have more than adequately represented the Class, as their interests are aligned with, and are not antagonistic to, the interests of Class Members.  The Class Representative has cooperated fully with Class Counsel in representing the Class, assisting in drafting the Complaint, FAC and SAC, staying informed about the case, searching for and providing documents to Class Counsel, providing relevant information needed by Class Counsel, and participating in mediation.  Class Counsel, by the same token, has vigorously represented the Class throughout the litigation and ultimately obtained significant monetary relief.  Accordingly, this factor supports final approval.

### 2.    Rule 23(e)(2)(B): The Settlement Was Negotiated at Arm's Length.

The Settlement was negotiated at arms' length. (*Id.*, ¶ 23). On November 17, 2023, the Parties engaged in a full day mediation session with David A. Rotman, who has extensive experience in labor

and employment litigation. (*Id.*). As a result, the proposed Settlement is presumptively fair. *Carlotti*, 2019 WL 6134910, at *6; *see also Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (finding that involvement of a mediator suggested the settlement "was not the result of collusion or bad faith by the parties or counsel"). Indeed, Plaintiff and Class Counsel engaged in negotiations with a wealth of information obtained through Class Counsel's pre-suit investigation and Defendants production of information and data related to the Class Members and Aggrieved Employees prior to and at mediation. (Dkt. 35-1, ¶¶ 19-26). Plaintiff's understanding of the litigation, coupled with Class Counsel's knowledge and experience litigating and settling similar class actions, supports Class Counsel's belief that the Settlement is fair, reasonable, and adequate. *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.") (citation omitted).

While the Parties were not able to resolve their disputes at the mediation, Mr. Rotman continued to engage with the Parties and issued a mediator's proposal that was ultimately accepted by the Parties on January 10, 2024. (Dkt. 35-1, ¶ 24). "[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *See G. F. v. Contra Costa Cnty.*, No. 13-cv-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (citation omitted); *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (noting that private mediation "tends to support the conclusion that the settlement process was not collusive"). This favors final approval.

Moreover, the Settlement bears no indicia of collusion. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-48 (9th Cir. 2011); *Carlotti,* 2019 WL 6134910, at *8. Each Class Member who does not opt out will receive pro rata compensation based on their membership in an applicable class from the GSA. Class Counsel seeks attorneys' fees of the Ninth Circuit's benchmark of 25% of the GSA plus reimbursement of actual, out-of-pocket expenses. There is no clear sailing provision. And no amount of the GSA will revert to Defendants under any circumstances. As a result, the Settlement is the "product of serious, informed, non-collusive negotiations." *Carlotti*, 2019 WL 6134910, at *9 (quotation omitted).

**3.      Rule 23(e)(2)(C): The Settlement Provides Meaningful and Substantial Relief to the Class.**

It is axiomatic that "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624.  The Settlement provides substantial monetary relief to the Class considering (1) the costs, risks, expenses, and delays of trial and appeal, (2) the effectiveness of the proposed distribution plan, (3) the fair and explained terms of the substantial GSA that will sufficiently pay for all of the settlement costs, including any award of attorneys' fees and expenses, and (4) the fact that no side agreements exist.  Fed. R. Civ. P. 23(e)(2)(C).

*a)      The costs, risks, expenses, and delays of trial and appeal*

The Settlement provides substantial and immediate relief to the Class in the face of the inherent uncertainties of litigation.  "The substantial and immediate relief provided to the Class under the Settlement weighs heavily in favor of its approval compared to the inherent risk of continued litigation, trial, and appeal, as well as the financial wherewithal of the defendant." *Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012).

Notwithstanding Plaintiff's confidence in the merits of his claims, continued prosecution of this Action entails genuine and potentially case-dispositive risks at each stage of the litigation, from class certification and summary judgment to trial and appeal.  Compounding those risks are the substantial costs and potential for delay if Plaintiff proceeds to trial and perhaps through appeal.  Considering those uncertainties, there is little question that the proposed Settlement provides an adequate remedy on behalf of the Class.

In fact, this case presents significant risks to recovery.  Defendants felt strongly about their ability to successfully oppose class certification and prevail on the merits.  The risks of continued litigation include, but are not limited to:  (i) the risk that Defendants would be able to prove that, as a matter of practice, it provided meal and rest breaks; (ii) the risk that Plaintiff would be unable to prove that Defendants acted with the requisite scienter to justify awards of statutory penalties under California Labor Code §§203 and 226(e); (iii) the risk that Plaintiff would face difficulties in recovering substantial civil penalties based on the discretion this Court has under the PAGA to reduce them; (iv) the risk that Class Members would obtain considerably smaller recoveries if no penalties

are recovered (*i.e.*, Plaintiff failed to show Defendants' conduct was willful and intentional under California Labor Code §§203 and 226, respectively) and relief is limited to the underlying restitution for overtime hours and meal and rest premiums; (v) the risk that Defendants would be able to defeat class certification based on variations in the experiences of absent Class Members; and (vi) the risk that Defendants will garner additional releases from putative Class Members before trial (presenting dangers to Plaintiff's ability to proceed with a class action even if initially certified). While Plaintiff strongly believes in the merits of this case, he recognizes that protracted litigation presents risks to the class as a whole.

There is meaningful risk that a factfinder could agree with Defendants at trial. Indeed, class action trials are inherently risky. In the face of additional months, if not years, of litigation, Plaintiff must weigh the very real risk that the Court—or a jury—could be unconvinced that Defendants misclassified Class Members. Accordingly, while Plaintiff vigorously disputes Defendants' contentions on the merits, the risks of litigation weigh in favor of settlement. *See Knapp v. Art. com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017) (approving settlement where "[c]ase law suggests that plaintiff would have faced challenges in continuing to litigate" and "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results").

While Plaintiff may be able to establish that the California Commissioned Employees were misclassified as exempt, Defendants might be able to present evidence that more than half of these employees' salaries derived from commissions or that they were properly classified under one or more exemptions. Specifically, Defendants assert that Plaintiff and other California Commissioned Employees are exempt under the administrative exemption, outside sales exemption, commissioned employee exemption or, for Managers, the executive exemption. In turn, if Defendants are correct, Plaintiff would not have a case for wage and hour claims, based on the fact that Plaintiff and other California Commissioned Employees would be exempt from overtime and minimum wage requirements. Further, Defendants contend that Plaintiff cannot certify any proposed class or subclass. As noted, Defendants believe there are multiple exemptions that may be applicable, and as such, predominance of individualized inquiries necessary to establish liability on the exemption issue alone

will necessarily create hundreds of mini-trials, thus defeating class certification.

Furthermore, the level of proof required to meet the scienter requirements of California Labor Code §§203 and 226(e) ("willful," "good faith," and "intent") is largely unknown due to a dearth of case law on the subjects. Even assuming Defendants underpaid Class Members, there is no guarantee that the Court will find Defendants' underpayment was "willful" or intentional under California Labor Code §§ 203 and 226, respectively, considering that the amount of off-the-clock work performed by the California Commissioned Employees was reasonably considered exempt from these Code provisions.

Civil penalties under the PAGA are also difficult to predict in view of the statute's reduction provisions. *See* Cal. Lab. Code § 2699(e)(2) (". . . a court may award a lesser amount than the maximum civil penalty amount specified by this part if . . . to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory"). While Class Counsel can recover attorneys' fees under PAGA (Cal. Lab. Code § 2699(g)), this will not be a source of great joy to Class Members if their recovery of civil penalties is small.

Additionally, case law has made it difficult to certify a class in federal courts because of the predominance requirement of Rule 23(b)(3) on damages. The Supreme Court in *Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013) denied certification because plaintiffs were not able to offer a theory for the exact calculation of damages. The *Comcast* decision suggests that damages must also be a common class wide issue and that the calculation of the damages is required at the class certification stage. In the absence of records showing the exact overtime hours the putative class members worked, proving class wide damages may be difficult.

Considering that these uncertainties could also lead to protracted litigation, both at the trial and appellate levels, the circumstances surrounding the Settlement show that it reflects a fair, adequate, and reasonable compromise of disputed claims on behalf of the Class Members. Thus, Plaintiff has achieved a fair settlement that reflects an excellent recovery on behalf of the Class Members that merits this Court's final approval. *See In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327 (D. N.J. 2002) (approving settlement that only provided recovery based on the estimated liability exposure).

Finally, the risk of maintaining class action status through trial supports final approval. A class has not been certified in this case, and Defendants will oppose certification if the case proceeds. *See In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013). Indeed, Defendants have insisted throughout litigation that individual questions predominate over common questions with regard to exposure, reliance, materiality, causation, and injury. Although Plaintiff asserts that certification is appropriate here, the risk remains that the Court could refuse to certify a class. In that event, putative class members would receive nothing. And even if the Court did certify a litigation class, Plaintiff would still face potential review on appeal, and would need to prove his claims at trial, which carries serious expense and further delay—potentially delaying recovery for years. Likewise, Plaintiff would continue to face the risk that a "district court may decertify a class at any time." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). The proposed Settlement allows Plaintiff and Settlement Class Members to avoid these risks, additional expenses, and delays in favor of immediate recovery.

### b)    The Effectiveness of Distribution to the Class

Rule 23(e)(2)(C)(ii) instructs courts take into account the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii); *see also Carlotti*, 2019 WL 6134910, at *9.

As provided by the terms of the Settlement, the Parties utilized an opt-out procedure whereby any Class Member who does not opt-out would be entitled to a pro-rata share based on their workweeks from the portion of the Commissioned Employee Class and/or California Employee Class settlement amounts. (*See* Dkt. 35-1, ¶ 12, Ex. A). Class Members could also object to the Settlement or contest the number of workweeks allocated to them during the Class Period. (*Id. See also* Dkt. 50). And, for purposes of an Aggrieved Employee's Individual PAGA Payment, each Aggrieved Employee will receive a *pro rata* amount payable from the 25% portion of PAGA Penalties that will be paid to Aggrieved Employees based on each Aggrieved Employee's number of Eligible Workweeks during the PAGA Period as the Aggrieved Employees could not opt-out of the PAGA portion of the Settlement. (Dkt. 45, Ex. 1).

As detailed in Section IV above, CPT executed a comprehensive Notice Program consistent

with the Parties' Settlement Agreement and as approved by the Court, which provided notice to all Class Members, including by providing individual direct notice to each and every Class Members via mail and, where possible, via email as well. (Soto-Najera Decl. ¶¶ 2-8). CPT also provided additional information to the Class Member via a dedicated settlement website. (*Id*. ¶ 2). To date, not one single Class Member has opt-ed out and only one notice was returned as undeliverable. (*Id*. ¶¶ 4-8). However, efforts were made to locate updated addresses for that returned notice, and it was successfully re-mailed meaning that there are zero notices that could not be delivered. (*Id*.).

### 4.    Terms of Proposed Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) instructs courts to consider "the terms of any proposed attorney's fees, including the timing of payment." In accordance with the Settlement terms, Class Counsel concurrently request attorneys' fees in the amount of 25% of the GSA, which is Four Hundred Eighty-Two Thousand Two Hundred and Eighty-Two Dollars and Fifty Cents ($482,282.50), plus the reimbursement of actual, out of pocket litigation expenses of $10,095.24. (*See* Plaintiff's Motion for Attorneys' Fees, Expenses, and Plaintiff's Enhancement Award filed herewith). As detailed in Plaintiff's motion for attorneys' fees, expenses, and Plaintiff's enhancement award, the relief obtained for the Class is substantial by any metric, and the requested fee award is justified under this Circuit's case law. *See O'Connor v. Uber Techs., Inc.*, No. 13-03826, 2019 WL 1437101, at *14 (N.D. Cal. Mar. 29, 2019).

### 5.    No Other Agreements

Rule 23(e)(2)(C)(iv) requires consideration of "any agreement required to be identified under Rule 23(e)(3)." This provision is aimed "at related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e) 2003 Advisory Committee Notes. Plaintiff has entered into no such agreements.[7]

Taking into account the considerations above, the relief provided by the Settlement is more than sufficient to justify final approval.

---

[7] Plaintiff agreed to retain CPT to serve as the Claims Administrator, consistent with the Court's preliminary approval order. Plaintiff does not, however, understand this type of agreement to be the subject of Rule 23(e)(3)'s disclosure requirement.

**6.      Rule 23(e)(2)(D): The Settlement Treats All Class Members Equitably**

The Settlement is designed to benefit all Class Members equally and equitably, by providing equal access to the GSA.  (*See* Dkt. 45, Ex. 1).  Each Class Member shall have their portion of the Settlement determined by the number of workweeks that they worked for Defendants during the Class Period and each Class Member will receive the same pro rata share per workweek of the Settlement based on which class that they belong to.  (Dkt. 45, Ex. 1).  This factor supports final approval.

**7.      All Other Factors Weigh In Favor of Approving the Settlement**

In support of their motion for preliminary approval, Plaintiff submitted and the Court found ample evidence to support approval of the Settlement, consistent with the Federal Rules, prevailing case law, and the Northern District's Procedural Guidance for Class Action Settlements. (Dkt. 52). The only remaining obligation set forth under the Procedural Guidance is a description of Class Members' responses.  *See* Northern District's Procedural Guidance for Class Action Settlements, Final Approval § 1.

According to the declaration of Chantal Soto-Najera of CPT Group filed herewith, not one single Class Member opted out of the settlement and not one single person submitted an objection to the Settlement.  (Soto-Najera ¶¶ 9-11).  Additionally, out of the 316 of notices mailed out, only one (1) of those notices was returned as undeliverable.  (*Id.* ¶¶ 4-8).  However, efforts were made to locate an updated address for that returned notice, and it was successfully re-mailed leaving zero notices that could not be delivered. (*Id.*).

Finally, Class Counsel is not aware of any objections and has not received any notice of any objection either.  (*See* Declaration of Daniel Valles in Support of Plaintiff's Motion for Attorneys' Fees filed herewith).  In fact, all of the calls that were received by Class Counsel regarding this matter were positive and supportive.  *Id*.

**D.  The PAGA Payment Is Fair and Reasonable.**

The PAGA Penalty Payment of $155,000 allocated from the GSA is both fair and reasonable. Under this allocation, the LWDA will receive $116,250.00 (75%) and the Aggrieved Employees will receive $38,750.00 (25%). (Dkt. 45, Ex. 1).  Courts have significant discretion to reduce civil penalties under PAGA.  *See* Cal. Lab. Code § 2699(e)(2) (". . . a court may award a lesser amount than the

maximum civil penalty amount specified by this part if . . . to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory"). Indeed, courts routinely reduce the maximum penalty even if liability is found at trial. *See, e.g.*, *Carrington*, 30 Cal. App. 5th at 529. Thus, the $155,000 PAGA Penalty Payment that was preliminary approved by this Court should be approved.

### E. The Proposed Enhancement Award Is Fair and Reasonable.

Incentive payments reward the named plaintiff for the time and effort expended on behalf of the class, and for exposing himself to the significant risks of litigation. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *See, e.g.*, *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving incentive awards of $300,000 to each named plaintiff in recognition of services to class by responding to discovery, participating in mediation process and taking the risk of stepping forward); *Van Vranlcen v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award). Here, the value of this $15,000 award, if approved, is nominal compared to the total amount, fair compensation to Plaintiff, and, as previously discussed in Plaintiff's Motion for Preliminary Approval, justified. (*See* Dkt. 35, 35-1 and 35-2).

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the proposed Settlement, sign the proposed Order, and enter final judgment in accordance with the Settlement Agreement.


Dated:  November 3, 2025                           **VALLES LAW, P.C.**


By: _____
Daniel Valles
Kayla M. Rathjen
Attorney for Plaintiff
MATT SEIBERT, ON BEHALF OF
HIMSELF, AND ALL OTHERS
SIMILARLY SITUATED